STATE of Minnesota, Respondent,

v.

Hakim Jamal WILLIAMS, a/k/a
Merrall Lee Norton,
Appellant.

No. CX–98–820.

Supreme Court of Minnesota.

March 2, 2000.

John Garrett Westrick, St. Paul, for appellant.

Stephen L. Redding, Minneapolis, for respondent.

Robert D. Miller & Associates, Robert D. Miller, Minneapolis, amicus curiae for appellant.

Michael Hatch, Office of the Attorney General, St. Paul, amicus curiae for respondent.

## OPINION

STRINGER, Justice.

On February 10, 1998 Hakim Jamal Williams, appellant, was convicted by a jury in Hennepin County of attempted first-degree murder, first-degree criminal sexual conduct, and first-degree burglary, among other offenses, in connection with an incident on August 8, 1996 in which appellant broke into C.R.'s apartment and sexually assaulted and attempted to kill her. *See* Minn.Stat. §§ 609.185(1) (1998); 609.17 (1998); 609.342, subd. 1(d), (e)(i) (1998); 609.582, subd. 1(b), (c) (1996). Relying on 15 aggravating factors the trial court departed upwardly from the Minnesota Sentencing Guidelines on each sentence but did not identify the particular aggravating factors applicable to each sentence. The court also concluded the sexual assault and attempted murder did not constitute a single behavioral incident and sentenced appellant separately for each offense. The court of appeals affirmed. We granted review on the sentencing issue only. We reverse and remand for resentencing.

C.R., the victim, lived alone in her apartment in Minneapolis, Minnesota when, in the early morning of August 8, 1996, appellant broke in and assaulted her. She testified that when she went to bed at about 10:30 p.m. the previous evening, she left the door onto her second-floor balcony open but probably locked the screen. She was awakened by appellant placing his hand on her shoulder and asking her for money. She said she had none because she was a student. Appellant pulled her onto the floor and when she screamed, he placed a sleeping bag over her head. He pinned her to the floor and as he removed her clothing, he showed her a knife from her kitchen and said to her "don't make me use this." He penetrated her anally. He then attempted to drag her into the bathroom but she resisted. She testified that in the hallway the situation escalated into a "full intense state of struggling for [her] life." Appellant asked the victim repeatedly to defecate on the floor in the hallway near the living room – eventually she was able to comply and he "wiped her bottom" with her shirt.

At this point the victim attempted to escape as she screamed and ran for the door, but appellant prevented her from reaching it. She knew she was choking and believed she was dying but did not remember receiving the stab wounds she suffered in the incident. Eventually she lost consciousness and her next memory was seeing a police officer.

A neighbor of the victim testified that she was awakened at 2:40 a.m. by the voice of a woman in a nearby apartment repeatedly saying "no" and a man with a "sickening laugh." She called 911 and Officers Ted Fisher and Rick Lindner arrived at approximately 2:50 a.m. They heard nothing when they arrived at the victim's door, but after knocking, they heard a "metal railing being * * * struck heavily," and then scratching and a "gurgling" sound. At this point the officers

concluded that "someone was dying." They were unable to kick the door in, so Officer Lindner remained at the door while Officer Fisher ran outside and climbed onto the victim's balcony. Officer Fisher noticed the victim's screen door had an L-shaped cut and someone had placed a pair of scissors on top of an air conditioner to the left of the door. The victim had left the scissors on the balcony earlier that day.

The apartment was dark when Officers Lindner and Fisher entered but with a flashlight they saw the victim lying naked on the floor near the front door. She had a scarf tied tightly around her neck, her head was purple and the remainder of her body was white. With some difficulty Officer Lindner cut the scarf from her neck, the victim gasped for breath a couple of times and then told the officers "he tried to kill me." She suffered hemorrhages in and around her eyes caused by choking and had multiple lacerations and open rug burns.

On the night of the assault appellant was staying with his friend Audrene Houston who lived on the third floor of the victim's apartment building. At 2:50 on the morning of the assault Houston was awakened by flashing lights outside the building and a tapping at her bedroom door. Appellant was at her door. She let him in and they looked out her window and saw flashing lights and yellow police tape. At about 7:00 or 7:30 a.m. Houston drove appellant to his mother's home.[1]

Later in the morning of August 8 a neighbor found a set of keys outside the victim's apartment building. The victim identified them as hers and testified that she had left them in her kitchen the evening before. The keys provided access to the exterior door to the building and the interior door leading to the third floor where Houston's apartment was located.

A carpet sample removed from the victim's apartment contained semen that matched appellant's DNA profile in the Bureau of Criminal Apprehension database. Based on this evidence a warrant issued on February 19, 1997 and appellant was arrested the next day. DNA testing of appellant's blood sample confirmed that his DNA type matched both the semen found in the carpet sample and a rectal swab taken from the victim.

The state charged appellant with attempted first-degree murder, two counts of first-degree criminal sexual conduct, two counts of first-degree burglary, first-degree aggravated robbery, and two counts of kidnapping. *See* Minn.Stat. §§ 609.185(1); 609.17; 609.342, subd. 1(d), (e)(i); 609.582, subd. 1(b), (c); 609.245, subd. 1 (1996); 609.25, subd. 1(2), (3) (1998).[2] On February 10, 1998 a jury in Hennepin County found appellant guilty on all counts.

In sentencing, the trial court concluded that the conduct underlying appellant's sexual assault and attempted murder convictions did not constitute a single behavioral incident and therefore he could be sentenced separately for each offense. The court also concluded that appellant was a patterned sex offender pursuant to Minn.Stat. § 609.108 (1998).[3] A sentence of 480 months was imposed on the criminal sexual conduct conviction, the statutory maximum pursuant to section 609.108,[4] and of 240 months on the attempted first-de-

---

1. The parties stipulated that earlier in the summer of 1996 appellant had been paroled and placed in a halfway house but had absconded and a warrant issued for his arrest.

2. The state later dismissed the kidnapping charges.

3. This statute was formerly codified at Minn. Stat. § 609.1352.

4. The presumptive sentence for this offense under the Minnesota Sentencing Guidelines is 146 months, but Minn.Stat. § 609.108 requires a sentence of at least 292 months. *See* Minnesota Sentencing Guidelines IV; Minn. Stat. § 609.108, subd. 1.

gree murder conviction, also the statutory maximum.[5] The court also sentenced appellant to 96 months for one count of first-degree burglary, twice the presumptive sentence,[6] and ordered that the three sentences be served consecutively. The trial court identified 15 aggravating circumstances supporting its departures from the Minnesota Sentencing Guidelines but did not identify which factors it relied on to depart on each sentence.

Appellant argued to the court of appeals that the trial court abused its discretion in sentencing and that the jury selection violated his right to equal protection. *See State v. Williams*, 1999 WL 10256, at *1 (Minn.App. Jan.12, 1999). The court of appeals affirmed, concluding that the sexual assault and attempted murder did not arise from a single behavioral incident and that the trial court therefore did not err in imposing multiple sentences. *See id.* at *3. The court then addressed the factors cited by the trial court supporting the sentencing departures. It concluded that infliction of terror and particular vulnerability supported a departure on the burglary sentence; physical injury, gratuitous violence, psychological injury, and fleeing the scene supported a departure on the attempted murder sentence; and particular vulnerability, particular cruelty, and prior felony convictions supported a departure on the criminal sexual conduct sentence. *See id.* at *4. The court therefore held that the trial court did not abuse its discretion in the sentencing departures. *See id.*

## I. Departures in sentencing

■ We first address the trial court's departures from the Minnesota Sentencing Guidelines as to duration and by imposing consecutive sentences.[7]

■ As to the durational departures, in *State v. Evans* we held that "generally in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length." 311 N.W.2d 481, 483 (Minn.1981). Where severe aggravating factors exist however, a departure of up to the statutory maximum may be appropriate. *See State v. Glaraton*, 425 N.W.2d 831, 834 (Minn.1988); *State v. Stumm*, 312 N.W.2d 248, 249 (Minn.1981). Further, factors must be severe to support both a double durational departure and a departure as to consecutive sentencing. *See State v. Mortland*, 399 N.W.2d 92, 94 (Minn.1987); *State v. Wellman*, 341 N.W.2d 561, 566 (Minn.1983).

The purpose of the guidelines in imposing sentencing departures is to achieve consistency and fairness in sentencing, but unless the trial court states with particularity what aggravating factors it is relying on to justify each departure the rationale for the departure is unknown and effective appellate review is denied. We have held that the trial court may not rely on conduct underlying one conviction to support departure on a sentence for a separate conviction, *see State v. Spaeth*, 552 N.W.2d 187, 196 (Minn.1996), and conduct underlying proof of the offense itself cannot be relied upon to justify an upward departure, *see State v. Peterson*, 329 N.W.2d 58, 60 (1983).

■ The trial court relied on 15 aggravating factors to justify, in the aggregate, upward departures on the three sentences. In summary, the court referenced appellant's patterned sex offender status, prior sexual assault, prior felony involving personal injury, particular cruelty, permanent injury, invasion of the victim's zone of privacy, the victim's particular vulnerability, psychological trauma, humiliation suffered

---

**5.** The presumptive sentence is 180 months. *See* Minnesota Sentencing Guidelines II.G.

**6.** *See* Minnesota Sentencing Guidelines IV & V.

**7.** Consecutive sentencing of multiple current felonies against the same victim is a departure from the sentencing guidelines requiring aggravating factors. *See* Minnesota Sentencing Guidelines II.F.

by the victim, the aggravated nature of the offenses, appellant's dangerousness, use of a weapon, fleeing the scene,[8] lack of remorse, and sophistication and planning.

Our concern with the trial court's failure to provide separate justifications for each sentence is that a separate analysis of the reasons for departure as to each sentence may have led to a different sentencing result, would have informed the appellant as to the rationale for each sentence, and of course would have provided a clear record for review. Requiring separate justification for each departure is consistent with the intent of the Minnesota Sentencing Guidelines Commission as noted in the comments to the sentencing guidelines that where a judge departs both durationally and dispositionally in sentencing the judge must provide separate reasons for each departure. *See* Minnesota Sentencing Guidelines II.D.02 comment. A further concern is that factors supporting departure on one sentence may not justify a departure on another sentence. For example, the victim's vulnerability due to the fact she was asleep when appellant entered her apartment supports a departure on the criminal sexual conduct sentence but does not justify a departure on the attempted murder sentence because the victim was awake at the time of that offense. Thus, we hold that the trial court erred in not separately identifying the aggravating factors supporting each sentencing departure.

## II. Single behavioral incident analysis

■ We turn next to the issue of whether appellant committed the criminal sexual

conduct offense and attempted murder offense as part of a single behavioral incident. The trial court concluded that these offenses were separate and sentenced appellant for both.

Applying the "single behavioral incident" provision of Minn.Stat. § 609.035, subd. 1 (1996) with limited exceptions a court may only sentence a defendant once for a single behavioral incident even though it results in multiple crimes. The statute provides:

> [I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them.

Minn.Stat. § 609.035, subd. 1.[9]

■ The principle that only one sentence may be imposed based on a single behavioral incident protects defendants from both multiple sentences and multiple prosecutions[10] and ensures that "punishment * * * will be commensurate with the criminality of defendant's misconduct." *Johnson*, 273 at 399, 141 N.W.2d at 520–21. In determining whether a course of conduct consists of a single behavioral incident we have considered "factors of time and place * * * [and] whether the segment of conduct involved was motivated by an effort to obtain a single criminal objective." *Id.* at 404, 141 N.W.2d at 524. The state has the burden to establish by a preponderance of the evidence that the conduct underlying the offenses did not occur as part of a single behavioral inci-

8. We note that fleeing the scene is not a permissible aggravating factor. Few criminals would remain to be caught when the police arrive.

9. The statutory exceptions to section 609.035 include certain offenses where multiple sentences may be imposed, relating, for example, to the operation of a motor vehicle, causing injury or death to unborn children, possession of firearms, kidnapping, use of bullet-resistant vests and police radios in commission of crimes, use of code-grabbing devices, and solicitation of juveniles. *See* Minn.Stat.

§ 609.035. Since burglary is also included as an exception, *see* Minn.Stat. § 609.035; Minn.Stat. § 609.585 (1998), the trial court therefore did not err in sentencing appellant on the burglary offense even if burglary and other offenses were part of a single behavioral incident.

10. The statute "broaden[s] the protection afforded by our constitutional provisions against double jeopardy." *State v. Johnson*, 273 Minn. 394, 400, 141 N.W.2d 517, 521 (1966).

dent. *See State v. Griffin*, 336 N.W.2d 519, 525 (Minn.1983) (concluding state has burden at sentencing hearing to prove by a preponderance of the evidence defendant's criminal history); *State v. Zuehlke*, 320 N.W.2d 79, 82 (Minn.1982) (noting state has burden of proof on single behavioral incident issue).

The state argues that our decision in *State v. Bookwalter*, 541 N.W.2d 290 (Minn.1995), is strong support for the trial court's conclusion. We disagree. In *Bookwalter*, as here, we considered whether the defendant's criminal sexual conduct and attempted murder offenses arose from a single behavioral incident, but the circumstances in *Bookwalter* were quite different. Bookwalter broke into the victim's van looking for something to steal. *See id.* at 291. The victim later entered the van unaware that Bookwalter was hiding in the back seat and it was only after she had driven several miles that she realized Bookwalter was in the van. *See id.* He ordered her to drive to an isolated area and when they arrived, he pulled her into the back of the van and sexually assaulted her. *See id.* at 292. Then he drove the van to another location about two miles away, told the victim to leave the van and forced her into a wooded area where he punched her, hit her head with a stick and attempted to choke her. *See id.* at 293. On Bookwalter's conviction of criminal sexual conduct and attempted murder, the trial court held that the crimes were not part of a single behavioral incident and imposed sentence on each count. *See id.* The court of appeals affirmed, holding that the trial court did not err by imposing multiple sentences. *See id.* We too affirmed, concluding that the conduct underlying the offenses did not constitute a single behavioral incident because of the differences in time and place between the two offenses. *See id.* at 296–97. Further, different criminal objectives motivated the offenses, as Bookwalter had no "premedi-

tated plan." *See id.* at 296; *cf. State v. Herberg*, 324 N.W.2d 346, 349 (Minn.1982) (concluding two acts of criminal sexual conduct against the same victim in separate counties comprised a single behavioral incident because defendant drove the victim to a different location only to avoid detection and planned to continue his attack). Bookwalter testified that he decided to sexually assault his victim only after she entered the van, and after the sexual assault he drove the van to another location where he made the decision to attempt to kill her. *See Bookwalter*, 541 N.W.2d at 296.

In contrast, here it is not at all clear whether appellant entered the victim's apartment with the intent to sexually assault and then to attempt to kill her, or whether he made separate decisions to commit each offense. Certainly appellant committed the sexual assault and attempted murder as part of a continuum of escalating violence beginning with his unlawful entry into the victim's apartment and concluding with his act of tying the scarf tightly around her neck. For example, appellant threatened the victim with a knife during the sexual assault and subsequently stabbed her several times. But there is no way to reach a rational conclusion that the stabbing occurred as part of the sexual assault or the attempted murder.[11] Unlike *Bookwalter*, the state has not met its burden of proving a change in appellant's criminal objective during the course of this incident to support a break in the continuum of appellant's criminal conduct.

We are also persuaded that there is little distinction in time and place between the sexual assault and attempted murder. The trial court emphasized that appellant committed the attempted murder subsequent to the sexual assault and in a different room, but more is needed than that the

---

11. Significantly, the trial court sentenced appellant for a count of criminal sexual conduct requiring the use of or threat to use a weapon in causing submission to penetration. *See* Minn.Stat. § 609.342, subd. 1(d).

crimes occurred at a different time and place. Significant weight cannot be given to the factor of time because the record does not indicate how much time passed during these events—and it is obvious that there will always be some difference in time in a sequence of the commission of different criminal offenses. As to place, the distance between the bedroom and the living room was a matter of only a few feet, hardly justifying a conclusion that the offenses were not part of a single behavioral incident.

As respondent has failed to meet its burden of proving the sexual assault and attempted murder were separate offenses, we hold that the trial court erred in imposing sentences as to both offenses.

Reversed and remanded for resentencing in accordance with the court's ruling herein.