STATE of Minnesota, Respondent,

v.

Cody Adam BAUER, Appellant.

No. A08–1698.

Court of Appeals of Minnesota.

Dec. 29, 2009.

464 

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Lisa B. Hanson, Roseau County Attorney, Roseau, MN, for respondent.

Kirstin Kopp, Special Assistant State Public Defender, Fridley, MN, for appellant.

Considered and decided by Chief Judge TOUSSAINT, Presiding Judge; WRIGHT, Judge; and ROSS, Judge.

## OPINION

WRIGHT, Judge.

In this appeal of his convictions of multiple counts of controlled-substance crimes and the sentences pronounced for two of them, appellant argues that (1) he was entrapped by the state's informant or, alternatively, the government's outrageous conduct deprived him of the right to due process; (2) the prosecutor committed prejudicial misconduct; (3) the district court erred by pronouncing sentences for two convictions arising from a single behavioral incident; and (4) the district court erred by ordering payment of restitution to the Paul Bunyan Drug Task Force. For the reasons set forth below, we affirm.

## FACTS

In early May 2006, the Minnesota Bureau of Criminal Apprehension and the Paul Bunyan Drug Task Force contracted with a confidential informant (CI) to assist in their investigation of unlawful drug sales in Warroad. The CI opened a thrift shop as a cover for the drug-sting operation and received $2,000 per month for his services, in addition to an amount between $50 and $100 for each controlled buy.

The CI hired appellant Cody Bauer's mother to work at the thrift shop part time. After learning from Bauer's mother that she used morphine to control her migraine headaches, the CI asked if she would sell any to him. Bauer's mother declined but introduced the CI to Bauer, stating that Bauer may "know where

there's some weed." The first of three sales between the CI and Bauer occurred on May 16, 2006. Bauer's mother contacted her son, who appeared at the thrift shop approximately 45 minutes later with one-eighth ounce of marijuana. Bauer sold the marijuana to the CI for $25.

The second sale occurred on June 29, 2006. According to the CI, Bauer came to the thrift shop, advised the CI of his upcoming trip to purchase ecstasy, and asked the CI to provide money in advance if he was interested in purchasing any of the ecstasy. The CI declined to give Bauer the money but expressed an interest in obtaining drugs that day. Bauer left the thrift shop, returned approximately one hour later, and sold marijuana to the CI.

Bauer's account of this transaction differs from that of the CI. According to Bauer, he mentioned the ecstasy sale only after the CI asked Bauer whether he "knew where to find anything else." Bauer does not recall requesting money to purchase ecstasy or having planned a trip to obtain the drug. But Bauer does not deny selling marijuana to the CI on June 29, 2006.

The final sale occurred on July 3, 2006, when Bauer came to the thrift shop and offered to sell the CI ten ecstasy tablets for $320. After negotiating with the CI, Bauer sold ten ecstasy tablets to the CI for $300.

Bauer was arrested on October 23, 2006, and charged by amended complaint with third-degree controlled-substance crime, a violation of Minn.Stat. § 152.023, subds. 1(2), 3(a) (2004) (sale of ecstasy); distribution of a controlled-substance without affixed tax stamps, a violation of Minn.Stat. § 297D.09, subd. 1a (2004); two counts of fifth-degree controlled-substance crime, a violation of Minn.Stat. § 152.025, subds. 1(1), 3(a) (2004) (sale of marijuana); and conspiracy to commit fifth-degree con-trolled-substance crime, a violation of Minn.Stat. §§ 152.025, subds. 1(1), 3(a), 152.096 (2004) (conspiring to sell marijuana). A jury convicted Bauer of each count. The district court pronounced sentences for each offense except fifth-degree conspiracy to commit a controlled-substance crime, which arose from the same behavioral incident as the June 29 fifth-degree controlled-substance crime. The district court then stayed the imposition of each sentence and ordered Bauer to pay restitution to the Paul Bunyan Drug Task Force. This appeal followed.

## ISSUES

I. Is the evidence sufficient to support the jury's finding that appellant was not entrapped?

II. Did the prosecutor commit prejudicial misconduct?

III. Did the district court violate Minn. Stat. § 609.035 (2004) by imposing separate sentences for third-degree controlled-substance crime and distribution of a controlled substance without affixed tax stamps?

IV. Did the district court abuse its discretion by ordering appellant to pay restitution to the Paul Bunyan Drug Task Force?

## ANALYSIS

### I.

 Bauer argues that his convictions must be reversed because ample evidence supports the affirmative defense of entrapment, which he chose to submit to the jury. When reviewing the sufficiency of the evidence, we conduct a painstaking analysis of the record to determine whether, based on the facts in the record and the legitimate inferences that can be drawn from those facts, the jury reasonably could

find the defendant guilty of the offense. *State v. Chambers*, 589 N.W.2d 466, 477 (Minn.1999). In doing so, we view the evidence in the light most favorable to the verdict and assume that the jury believed the evidence supporting the guilty verdict and disbelieved any contrary evidence. *Id.* We will not disturb a guilty verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, reasonably could conclude that the defendant is guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn. 1988).

To raise an entrapment defense, a defendant must establish by a fair preponderance of the evidence that the state induced the defendant to commit the offense by improper pressure, badgering, or persuasion. *State v. Vaughn*, 361 N.W.2d 54, 57 (Minn.1985). The evidence must establish that the state did something more than merely solicit the commission of a crime. *State v. Olkon*, 299 N.W.2d 89, 107 (Minn.1980). If the defendant establishes inducement by the state, the burden shifts to the state to prove beyond a reasonable doubt that the defendant was predisposed to commit the offense. *State v. Grilli*, 304 Minn. 80, 96, 230 N.W.2d 445, 456 (1975).

Bauer argues that, because the district court instructed the jury on the entrapment defense, the element of inducement was necessarily proved by a preponderance of the evidence. We disagree. "[A] party is entitled to an instruction on his theory of the case if there is evidence to support it." *State v. Ruud*, 259 N.W.2d 567, 578 (Minn.1977). That the district court instructed the jury on Bauer's entrapment theory does not establish that the evidence is of sufficient weight to meet Bauer's burden of proof on the inducement element. Rather, it merely indicates that some evidence exists in support of inducement.

To determine whether there is sufficient evidence to support Bauer's claim of government inducement, we review the evidence related to each of Bauer's three sales to the CI. It is undisputed that the CI solicited morphine from Bauer's mother. But no sale occurred. Bauer's first sale occurred after Bauer's mother offered that Bauer may be able to sell some marijuana to the CI. Bauer's mother, not the CI, alerted Bauer to a willing buyer. Bauer then voluntarily came to the thrift shop and sold marijuana to the CI. Contrary to Bauer's claim of the CI's inducement, this evidence establishes that Bauer's first sale to the CI was induced, if at all, by Bauer's mother.

Although the evidence regarding the second sale is controverted, we view the evidence in the light most favorable to the verdict. *Chambers*, 589 N.W.2d at 477. As such, the record demonstrates that Bauer came to the thrift shop and proposed to obtain some ecstasy. The CI refused to advance the money for the ecstasy but expressed his willingness to buy marijuana from Bauer. Bauer left the store, returned approximately one hour later, and sold marijuana to the CI. When viewed in the light most favorable to the verdict, nothing in this transaction indicates by a fair preponderance that the CI exerted improper pressure, badgering, or persuasion to induce this sale. Rather, the evidence establishes that Bauer came to the thrift shop with a proposal to sell one type of controlled substance to the CI and ultimately engaged in a different, but also unlawful, controlled-substance sale.

The final sale occurred when Bauer came to the thrift shop and offered to sell ten ecstasy tablets for $320. After a brief negotiation, Bauer sold the ecstasy to the CI for a reduced price. Notwithstanding

the price negotiation, Bauer initiated the sale. It was not the product of improper pressure, badgering, or persuasion by the CI.

When viewing the evidence of each sale in the light most favorable to the verdict, we conclude that a reasonable jury could find that Bauer failed to establish by a fair preponderance of the evidence that any of the sales was the result of government inducement. Thus, we need not reach the second prong of Bauer's entrapment defense to conclude that Bauer was not entrapped by government action.

 Bauer argues, in the alternative, that reversal is warranted because the government's conduct during the sting operation was so outrageous that it violated the due-process guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution. Bauer raises this argument for the first time on appeal. We ordinarily will not decide issues that were not presented to the district court, even if the issue involves constitutional questions regarding criminal law. *State v. Sorenson,* 441 N.W.2d 455, 456–57 (Minn.1989). In light of the paucity of evidence supporting this claim, the interests of justice do not require us to depart from this general practice and consider this argument on the merits.

## II.

Bauer next contends that he is entitled to a new trial, arguing that the prosecutor committed prejudicial misconduct when (1) questioning certain witnesses at trial and (2) making several objectionable statements during closing argument and rebuttal. We address each argument in turn.

## A.

 It is improper for a prosecutor to suggest to the jury that its mission is to do anything other than determine whether the state has met its burden of proof in a criminal case. *State v. Rean,* 353 N.W.2d 562, 565 (Minn.1984). Bauer maintains that the prosecutor committed prejudicial misconduct during the questioning of Agents Ron Woolever and Joel Hopps by improperly encouraging jurors to use their verdicts to endorse the goals of the sting operation and express their desire to eliminate drugs in the community. Specifically, Bauer argues that questioning two investigating agents about perceptions of the worth of the undercover operation was prejudicial misconduct.

At trial, the prosecutor asked Agents Woolever and Hopps if they believed that the sting operation was worth the time and effort. Both answered affirmatively. Bauer's counsel objected when the prosecutor asked Agent Woolever the reasons for his opinion, and the district court properly sustained the objection. Later, when Agent Woolever testified that, in hindsight, he would do the sting operation again, Bauer's counsel objected to the prosecutor's question "Why?" Again, the district court properly sustained the objection.

 When a defendant objects at trial to a prosecutor's conduct, we apply a two-tiered harmless-error test. *State v. Yang,* 774 N.W.2d 539, 559 (Minn.2009). "For cases involving claims of unusually serious prosecutorial misconduct, there must be certainty beyond a reasonable doubt that misconduct was harmless. We review cases involving claims of less-serious prosecutorial misconduct to determine whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.* (citations omitted).

 Here, the district court properly sustained defense counsel's objections and instructed the jury that it cannot "speculate as to possible answers to questions

[that the district court] did not require to be answered." The district court also instructed the jury to disregard all evidence that the district court either ordered stricken or ordered the jury to disregard. Because the jury is presumed to have followed the district court's instruction to disregard statements as to which an objection has been sustained, Bauer's claim of reversible error is unavailing. *See State v. Taylor*, 650 N.W.2d 190, 207 (Minn.2002) (stating presumption that jury follows district court's instructions); *see also State v. Pendleton*, 706 N.W.2d 500, 509 (Minn. 2005) (holding no reversible error although prosecutor erred by impermissibly questioning a witness when district court sustained objection and properly instructed jury). Moreover, there is more than ample evidence in the record to support the jury's verdict. Based on our thorough review of the record, the prosecutor's improper questioning of Agents Woolever and Hopps was harmless, as it was not unusually serious misconduct and did not play a substantial part in influencing the jury to convict. *See Yang*, 774 N.W.2d at 559 (stating that harmless-error standard to be applied for less-serious prosecutorial misconduct is whether error "played a substantial part in influencing the jury to convict"). Further, even if the error had risen to the level of being "unusually serious," there is overwhelming evidence in support of Bauer's guilt, and the prosecutorial misconduct was harmless beyond a reasonable doubt. *See id.* (stating that unusually serious prosecutorial misconduct is reviewed to determine whether it was "harmless beyond a reasonable doubt.").

**B.**

 A defendant who fails to object at trial generally waives the right to appellate review of a prosecutor's conduct. *State v. Ives*, 568 N.W.2d 710, 713 (Minn. 1997). But we have the discretion, in limited circumstances, to review claims of prosecutorial misconduct when an objection was not raised before the district court. Minn. R.Crim. P. 31.02; *State v. Ramey*, 721 N.W.2d 294, 299 (Minn.2006). Before doing so, however, "there must be (1) error, (2) that is plain, and (3) affects substantial rights." *Ramey*, 721 N.W.2d at 302. An error is plain if it is clear or obvious, or "if the error contravenes case law, a rule, or a standard of conduct." *Id.* The burden rests with the appellant to demonstrate that plain error occurred. *Id.*

 If plain error is established, the burden shifts to the state to establish that the plain error did not affect the appellant's substantial rights. *Id.* An error affects substantial rights when "the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn.1998). To determine whether the state has satisfied its burden, we consider "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 682 (Minn.2007).

**1.**

 Bauer maintains that two arguments made by the prosecutor, the first during her closing argument and the second during rebuttal, improperly interjected the goal of eradicating drugs from the community and the value of the sting operation. We construe Bauer's argument as a claim that the prosecutor improperly appealed to passion or prejudice in an effort to distract the jury from deciding whether the state had met its burden of proof beyond a reasonable doubt. *See State v. Ashby*, 567 N.W.2d 21, 27 (Minn.1997);

*State v. Clark,* 296 N.W.2d 359, 371 (Minn. 1980). A prosecutor also may not use a community's crime problem or the need to protect the community as grounds for conviction. *Clark,* 296 N.W.2d at 377; *State v. Duncan,* 608 N.W.2d 551, 556 (Minn. App.2000), *review denied* (Minn. May 16, 2000).

■ Although Bauer did not make a contemporaneous objection, he now objects to the following statements made during closing argument: "That's not entrapment. That's exactly what happens in each and every undercover case. That's what Special Agent Woolever had been doing for 17 years. If it wasn't allowed, he and a lot of other people would be out of jobs and drug dealers would have free [rein]." A prosecutor may properly argue that a CI's conduct did not constitute entrapment when, as here, an entrapment defense is raised. But the portion of the argument that invites the jury to consider the crime's impact on the community, rather than to determine whether the state has met its burden of proof, was improper. *See State v. Peterson,* 530 N.W.2d 843, 848 (Minn. App.1995) (concluding that prosecutor's argument imploring jury not to "turn your back on these children" was prosecutorial misconduct because it was intended to send a message rather than focus on the particular facts of the case to determine whether the accused is guilty).

■ This error, however, does not automatically entitle the defendant to a new trial. When we consider the factors articulated in *Davis,* we conclude that the error was harmless. First, because Bauer admitted selling marijuana to the CI, the state's case against Bauer was very strong. *See Davis,* 735 N.W.2d at 682 (strength of evidence against defendant). Second, this comment, which is less than six lines in a 22–page closing argument, did not figure prominently in the state's

case against Bauer. *See id.* (pervasiveness of error). Third, although Bauer's counsel did not directly address this aspect of the prosecutor's argument during closing argument, we observe that he had the opportunity to do so. *See id.* (opportunity to rebut improper suggestions). And not all three *Davis* factors must weigh in the state's favor for the state's harmless-error argument to succeed. *See State v. Swanson,* 707 N.W.2d 645, 658 (Minn.2006) (concluding that prosecutor's impermissible questions and comments were harmless considering strength of state's case and the "limited nature of the prosecutorial misconduct"). Given the strength of the state's case and the brevity of the improper argument, there is not a reasonable likelihood that the prosecutor's improper argument urging the jury to convict Bauer in order to eradicate the drug problem from the community had a significant effect on the jury's verdict.

■ Bauer also argues that the following rebuttal argument constitutes prosecutorial misconduct: "[The CI] is not the one on trial. Cody Bauer is the one on trial. This entire undercover operation is not on trial. Cody Bauer is the one on trial." Bauer's assignment of error is without merit. The prosecutor's comments here do not attempt to persuade the jury to convict "to protect society," nor do they address the general crime problem. Rather, they focus the jury on the precise issue that it must decide—whether the state has proved its case against the defendant.

### 2.

■ Bauer next argues that the prosecutor improperly interjected her personal opinions into the arguments and relied on facts that are not in evidence. A prosecutor may not refer to facts that are not supported by the evidence. *State v. McArthur,* 730 N.W.2d 44, 53 (Minn.2007).

But a prosecutor may draw "reasonable inferences from [the] evidence" presented at trial. *State v. Young*, 710 N.W.2d 272, 281 (Minn.2006) (quotation omitted). A prosecutor may not "express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." *State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993) (quotation omitted). But a prosecutor may direct the jury to consider circumstances that cast doubt on a witness's veracity or that corroborate the witness's testimony. *State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984).

 Bauer now objects to the following argument, claiming it to be prosecutorial misconduct:

> [L]ook at the defendant's demeanor in the videos of these transactions. He doesn't look a bit uncomfortable. It's very relaxed and laid back, despite his testimony that he was weary. He was uneasy. That's what he told you yesterday. I don't know about you, but if I'm uneasy, I avoid the situation. I don't go back voluntarily on several occasions.

It was not improper for the prosecutor to direct the jury to scrutinize the defendant's demeanor in the video to determine the credibility of his defense. But the prosecutor did not limit her argument to this permissible conduct. Rather, the prosecutor interjected her own hypothetical behavior into the analysis and offered her personal opinion as to how the video demonstrates the defendant's guilt. This manner of argument is plainly erroneous.

Bauer also contends that the prosecutor committed misconduct by arguing:

> Is it reasonable to believe that the defendant went and told Special Agent Newhouse, after he was arrested on October 23rd, 2006 that he thought he had been set up? I listened to hundreds of statements.... Most people who believe

they've been set up are very eager to tell the police that they think they've been set up. They don't wait to be asked, and officers don't generally ask people "oh, by the way, do you think you were set up on this deal?"

The prosecutor may pose rhetorical questions to the jury, asking it to use common sense to determine whether the defense presented is reasonable. *See State v. Starkey*, 516 N.W.2d 918, 927 (Minn.1994) (concluding that prosecutor did not commit misconduct by arguing that defense would try to divert jury's attention "from the real facts, the real logic and the real common sense of this case"). But, here again, the prosecutor plainly erred when she interjected her experience and opinion into the argument.

We consider whether this improper argument affected Bauer's substantial rights. *Griller*, 583 N.W.2d at 741. For three reasons, we conclude that it did not.

First, Bauer's counsel astutely addressed the prosecutor's improper arguments during closing argument, stating:

> Maybe [Bauer] doesn't display the same types of things that all of us do when we're nervous or speaking in front of people. He was scared, and the way he appeared on the stand, answering questions directly, looking up at the ceiling but doing it quickly is the same way he appears on the videos. Watch the videos, you'll see it.

Bauer's counsel also urged the jury to conclude that Bauer's defense was reasonable because there was a dearth of evidence to support the claim that Bauer sold drugs before or after the sales to the CI, and because "none of these sales would have occurred without [the CI]."

Second, the district court properly instructed the jury that it was the sole judge of credibility and that it "should rely ...

upon [its] own experience, good judgment, and common sense." And we presume that the jury followed the district court's instructions. *Taylor*, 650 N.W.2d at 207.

Finally, the state's case, which included Bauer's admission to the crimes charged, was very strong. Accordingly, there is no reasonable likelihood that the prosecutor's improper interjection of her personal opinion about Bauer's demeanor and credibility affected Bauer's substantial rights by prejudicially affecting the jury's verdict. *See Griller*, 583 N.W.2d at 741 (third prong of plain-error standard).

### 3.

■■■ "A prosecutor's closing argument should be based on the evidence presented at trial and inferences reasonably drawn from that evidence." *State v. DeWald*, 463 N.W.2d 741, 744 (Minn.1990). Although appeals to common sense are permitted, *see Starkey*, 516 N.W.2d at 927, a prosecutor may not urge the jurors to look at their own experiences to determine whether a defense is credible, *State v. Williams*, 525 N.W.2d 538, 549 (Minn.1994).

■■■ Bauer contends that the prosecutor made three arguments, the first two during closing argument and the third during rebuttal, which impermissibly urged the jurors to place themselves in Bauer's position. Bauer first argues that the following statements of the prosecutor were improper:

> [W]hen I first spoke to you during the jury selection process, I asked several of you what you would do if somebody called you and asked you to sell them drugs, and everyone that was asked said they'd hang up the phone and I believe one person even said they'd call the cops.
>
> Common sense and reason tell you that those would be normal reactions for somebody who is not ready and willing to sell drugs.

Second, Bauer objects to the following argument:

> Think about that for a minute. If this was the only time that Cody Bauer ever sold drugs, is it reasonable to believe that he just cannot remember where he got those drugs. *Come on. You do something stupid and you realize it after the fact and you don't think and rethink that even in your own mind?* Is that reasonable to believe?

(Emphasis added.) Although it is proper to urge the jury to rely on common sense and reason, the prosecutor improperly asked the jurors to use the answers that they gave during voir dire as a means to determine the credibility of Bauer's defense. The Minnesota Supreme Court has ruled that such arguments are improper. *See Williams*, 525 N.W.2d at 549 (holding it improper for prosecutor to urge jurors to look at their own experiences as proof that defense is not credible). Therefore, the first portion of the prosecutor's closing argument and the italicized portion of the later argument constitute plain error.

Again, however, we do not conclude that the prosecutor's improper argument affected the jury's verdict. *See Griller*, 583 N.W.2d at 741 (third prong of plain-error standard). When considered in conjunction with the district court's instructions to the jury to consider the evidence presented as it relates to the elements of the offense and to utilize its common sense when considering witness credibility, the guilty verdicts are surely unattributable to the prosecutor's misconduct. Moreover, Bauer's counsel responded in his closing argument by directing the jury to the absence of any evidence in the record that Bauer ever sold drugs before or after the activity at issue in the case, thereby ad-

vancing its theory of the case to refute the prosecutor's improper closing argument.

■ Finally, Bauer's objection to the prosecutor's rebuttal argument comparing the CI's compensation to that of some of the jurors' for "dangerous thankless work" also is unavailing. When viewed in context, the prosecutor's argument rebuts the defense argument that compensating the CI was both excessive and bad law-enforcement policy. The prosecutor's rebuttal of this claim, although inartful, did not urge the jury to base its determination of Bauer's guilt on the jurors' personal experiences.

**4.**

■ A "prosecutor is free to specifically argue that there is no merit to a particular defense in view of the evidence or no merit to a particular argument." *Salitros,* 499 N.W.2d at 818. But a prosecutor may not disparage the defendant or attack the defendant's character unless the prosecutor's comment is carefully confined to the evidence. *See, e.g., Ives,* 568 N.W.2d at 713–14 (holding that prosecutor's description of defendant as a "would-be punk" was improper); *State v. Scruggs,* 421 N.W.2d 707, 715–16 (Minn.1988) (stating that prosecutor's description of defendant as a "one-eyed jack" was not improper when it involved a legitimate reference to the evidence); *State v. Holden,* 414 N.W.2d 516, 520 (Minn.App.1987) (holding that prosecutor's comment comparing defendant and her family to "little bugs and critters" was "excessive" but not prejudicial misconduct), *review denied* (Minn. Jan. 15, 1988).

Bauer asserts that the prosecutor disparaged the defense and defense counsel on four separate occasions during rebuttal.

To support his claim, Bauer focuses on arguments in which the prosecutor sarcastically referred to "poor innocent Cody Bauer" to refute Bauer's argument that he was victimized by the CI and the sting operation, rather than a willing drug dealer.

Bauer then objects to the following statement:

> The bottom line in this case, Cody Bauer did sell drugs, not once, not twice, but three times. That shows that he was ready and willing to do so. Anybody who is not doesn't keep doing it. They think better of it if they feel like they made a mistake the first time.

We do not agree with Bauer's claim that these arguments were improper. Rather, they are a fair challenge to the merits of the defense's theory of the case.

■ Bauer also objects to the first two sentences of the following portion of the prosecutor's rebuttal argument, which we reproduce here in context: [1]

> *There's no evidence that Cody Bauer ever sold drugs before or after. There's no evidence that he got caught.* There's plenty of circumstantial evidence that he was very involved in the drug culture and the drug world. He used drugs. He admitted he did. . . . He knew people who sold drugs. He knew how much they weighed. He knew how to get hooked up with people who had more serious street drugs, hallucinogenic drugs. He had drug paraphernalia in his car when he got arrested. He told you it had been in there for months and it, you know, had gone untouched. Is that believable? Who carries illegal controlled substances around in their car if they are not using drugs? Come on.

---

1. When reviewing a prosecutor's statements, we examine the arguments "as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence." *State v. Walsh,* 495 N.W.2d 602, 607 (Minn.1993).

(Emphasis added.) This rebuttal argument responds to Bauer's closing argument urging the jury to conclude that, because there was no evidence in the record to establish that Bauer had sold drugs before the three sales to the CI, the CI must have induced the sales. As such, this portion of the prosecutor's rebuttal argument was a proper response to a specific statement made by Bauer's counsel during closing argument. It does not constitute misconduct.

In sum, our review of the record establishes that, although certain aspects of the prosecutor's questioning of witnesses and arguments during closing and rebuttal were improper, when considered singularly or cumulatively, prejudicial misconduct was not committed. Accordingly, Bauer's challenge on the ground of prosecutorial misconduct fails.

## III.

 Bauer next challenges the sentences pronounced for two of the offenses of conviction: third-degree controlled-substance crime and distribution of a controlled substance without affixing tax stamps. Bauer argues that the district court erred by sentencing him for two convictions arising from a single behavioral incident, thus violating Minn.Stat. § 609.035, subd. 1 (2004).[2]

 A district court's sentencing decision ordinarily entails factual determi-

nations that will not be reversed on appeal unless clearly erroneous. *See Effinger v. State*, 380 N.W.2d 483, 489 (Minn.1986). But when, as here, the facts are not in dispute, whether multiple offenses are part of a single behavioral incident presents a question of law, which we review de novo. *See State v. Marchbanks*, 632 N.W.2d 725, 731 (Minn.App.2001).

 Subject to limited exceptions that do not apply here, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn.Stat. § 609.035, subd. 1. Thus, when multiple offenses arise from a single behavioral incident, the district court may sentence for only one offense. *See id.* Section 609.035 protects against exaggerating the criminality of an offender's conduct by making punishment and prosecution commensurate with the offender's culpability. *State v. Secrest*, 437 N.W.2d 683, 684 (Minn.App.1989), *review denied* (Minn. May 24, 1989). If section 609.035 applies, all multiple sentences, including concurrent sentences, are barred. *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn.1995). Whether the offenses arose from the same behavioral incident depends on the facts and circumstances of the particular case. *State v. Hawkins*, 511 N.W.2d 9, 13 (Minn.1994).

---

2. The district court pronounced sentences for four of the five offenses of conviction: third-degree controlled-substance crime, Minn.Stat. § 152.023, subds. 1(1), 3(a) (sale of ecstasy); distribution of a controlled substance without affixed tax stamps, Minn.Stat. § 297D.09, subd. 1a; and two counts of fifth-degree controlled-substance crime, Minn.Stat. § 152.025, subd. 1(1), 3(a) (sale of marijuana). The district court declined to pronounce a sentence for fifth-degree conspiracy to commit a controlled-substance crime, Minn.Stat. §§ 152.025, subds. 1(1), 3(a), 152.096 (con-

spiring to sell marijuana), because it arose from the same behavioral incident as one of the fifth-degree controlled-substance crimes. The district court stayed imposition of each sentence and ordered Bauer to serve a term of probation. Bauer's appeal of the stayed sentences at issue here is authorized by Minn. Stat. § 244.11, subd. 1 (2004), which provides: "An appeal to the Court of Appeals may be taken by the defendant or the state from any sentence imposed or stayed by the district court...."

 The Minnesota Supreme Court has set forth two tests for determining whether multiple offenses arise from a single behavioral incident. *State v. Johnson*, 273 Minn. 394, 404, 141 N.W.2d 517, 525 (1966). The test to be applied depends on whether the offenses involved are intentional crimes. *Id.* When conducting a single-behavioral-incident analysis for two intentional crimes, Minnesota courts consider whether the conduct (1) shares a unity of time and place and (2) was motivated by an effort to obtain a single criminal objective. *State v. Williams*, 608 N.W.2d 837, 841 (Minn. 2000); *State v. Soto*, 562 N.W.2d 299, 304 (Minn.1997). When the offenses include both intentional and nonintentional crimes, however, the proper inquiry is whether the offenses (1) occurred at substantially the same time and place and (2) arose from "a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *State v. Gibson*, 478 N.W.2d 496, 497 (Minn.1991) (alteration in original) (quotation omitted). This second test substitutes the factor of "single criminal objective" with the singleness of the conduct itself, as measured primarily by the state of mind it manifests. *Johnson*, 273 Minn. at 404, 141 N.W.2d at 525.

 To determine whether the two offenses at issue here arose from a single behavioral incident, we first determine whether the offenses involved are intentional. "The relationship between a criminal act and the mental state of the person charged with the crime provides the rational basis for our system of criminal prosecution." *State v. White*, 464 N.W.2d 585, 587 (Minn.App.1990), *review denied* (Minn. Mar. 15, 1991). But the existence of criminal intent, or other forms of mens rea, is not constitutionally mandated and the legislature may create criminal strict-liability offenses without an intent element.[3] *Id.; see also State v. Kjeldahl*, 278 N.W.2d 58, 61 (Minn.1979) (recognizing that legislature may criminalize conduct without regard to intention or motive of actor). Strict-liability statutes generally are disfavored, however, and legislative intent to impose strict criminal liability must be clear. *In re Welfare of C.R.M.*, 611 N.W.2d 802, 805 (Minn.2000); *see also Staples v. United States*, 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994) (stating that offenses that do not require criminal intent are disfavored, and "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime"). "The absence of an intent element does not create a strict liability crime. It simply creates a general intent crime." *State v. Hart*, 477 N.W.2d 732, 736 (Minn.App. 1991), *review denied* (Minn. Jan. 16, 1992).

The offenses at issue here are third-degree controlled-substance crime and distribution of a controlled substance without tax stamps. A person commits a third-degree controlled-substance crime when "the person unlawfully sells one or more mixtures containing a narcotic drug[.]" Minn.Stat. § 152.023, subd. 1(1). A person commits distribution of a controlled substance without tax stamps when the defen-

**3.** A "strict-liability crime" is defined as "[a] crime that does not require a *mens rea* element, such as traffic offenses and illegal sales of intoxicating liquor." *Black's Law Dictionary* 429 (9th ed. 2009). In contrast, a "general-intent crime" is "[a] crime that involves performing a particular act without intending a further act or a further result." *Id.* at 428; *see also State v. Vance*, 734 N.W.2d 650, 656 (Minn.2007) ("Specific intent means that the defendant acted with the intent to produce a specific result, whereas general intent means only that the defendant intentionally engaged in prohibited conduct." (Emphasis omitted.)).

dant (1) acted as a dealer and (2) distributed a controlled substance without affixing the appropriate stamps, labels, or other indicia. Minn.Stat. § 297D.09; 10A *Minnesota Practice* CRIMJIG 20.51 (2005).

█ Although neither of these criminal statutes expressly establishes an intent element, a careful reading of the statutes establishes that the legislature has not indicated an intent to eliminate the mens rea requirement for these two offenses; rather, the legislature chose only to identify the particular prohibited acts. *See* Minn. Stat. §§ 152.023, subd. 1(1), 297D.09. In contrast, nonintentional crimes generally include "public welfare" offenses, such as traffic violations and those that incorporate specific language *negating* an intent element. *See Staples,* 511 U.S. at 606–07, 114 S.Ct. at 1797–98 (describing line of precedent recognizing strict criminal liability for "public welfare" offenses); *State v. Reiland,* 274 Minn. 121, 124–25, 142 N.W.2d 635, 638 (1966) ("Although the offense of negligent homicide is classified as a serious crime, in essence it is a traffic offense designed to promote the safety of persons properly upon the highway. As is true of other traffic offenses, intent is not an essential element of the crime."); *Johnson,* 273 Minn. at 404, 141 N.W.2d at 525 (stating that "a characteristic unique to traffic offenses is that intent is not an essential element of the offense"); *see also, e.g.,* Minn.Stat. §§ 169.13, subd. 2 (imposing criminal liability when driver "carelessly or heedlessly" operates motor vehicle), 609.205 (imposing criminal liability for manslaughter when an individual negligently causes death of another), 609.21, subd. 1 (imposing criminal liability for criminal vehicular homicide when an individual "causes injury to or the death of another as a result of operating a motor vehicle" in grossly negligent or negligent

manner) (2008). Because the legislature has not clearly expressed its intent to eliminate the mens rea element for the two offenses at issue here, we conclude that third-degree controlled-substance crime, Minn.Stat. § 152.023, and distribution of a controlled substance without affixed tax stamps, Minn.Stat. § 297D.09, are intentional crimes.

Because the two offenses at issue are intentional crimes, to determine whether the offenses arose from a single behavioral incident, we next consider whether they (1) share a unity of time and place and (2) were motivated by an effort to obtain a single criminal objective. *Williams,* 608 N.W.2d at 841. Bauer was convicted of third-degree controlled-substance crime for the sale of ecstasy on July 3. He also was convicted of distribution of a controlled substance without affixed tax stamps based on the July 3 sale of ecstasy. The two offenses share a unity of time and place. Thus, we next consider whether they are motivated by the same criminal objective.

█ To determine whether the two offenses are motivated by the same criminal objective, we consider whether the acts performed were necessary to the commission of a single crime and motivated by a single intent to commit that crime. *State v. Shevchuk,* 282 Minn. 182, 186–87, 163 N.W.2d 772, 776 (1968); *see also Bookwalter,* 541 N.W.2d at 295–96 (stating that although focus primarily is on defendant's conduct rather than elements of crimes committed, "it is meaningful to recognize that the two crimes involve separate intents"). Here, one can comply with the tax-stamp law while violating the controlled-substance law. The acts Bauer performed were not "necessary to ... the commission of a single crime." *See Shevchuk,* 282 Minn. at 186, 163 N.W.2d at 776. Moreover, the criminal objective for the

sale of a controlled substance is the unlawful sale itself. The criminal objective of distribution of a controlled substance without affixed tax stamps is tax evasion. Thus, these two offenses are not motivated by a single criminal objective.

Because the two intentional offenses share a unity of time and place but are not motivated by a single criminal objective, they do not constitute a single behavioral incident. Accordingly, the district court did not violate Minn.Stat. § 609.035, subd. 1, when it pronounced sentences for both offenses.

### IV.

■ Bauer next argues that the district court erred by ordering him to pay restitution to the Paul Bunyan Drug Task Force. When challenging restitution, the party against whom restitution is ordered has the initial burden of production. Minn.Stat. § 611A.045, subd. 3 (2004). To satisfy this burden, Bauer was required to raise any legal or factual challenges to restitution before the district court. *Id.; State v. Thole*, 614 N.W.2d 231, 234–35 (Minn.App.2000). Because Bauer failed to challenge restitution before the district court, his claim is procedurally barred.

### DECISION

The evidence is more than sufficient to support the jury's determination that appellant was not entrapped. The prosecutor's improper questions and argument did not constitute prejudicial misconduct. The district court did not err by sentencing appellant for third-degree sale of a controlled substance and distribution of a controlled substance without affixed tax stamps because these offenses did not arise from a single behavioral incident. And because appellant did not present his restitution challenge to the district court, it is procedurally barred.

**Affirmed.**