*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1694**

State of Minnesota,
Respondent,

vs.

Bernard Miles,
Appellant.

**Filed September 15, 2014
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-12-31177

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Stephanie A. Karri, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Halbrooks, Judge; and Hudson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm appellant's convictions for second-degree assault, terroristic threats, and prohibited person in possession of a firearm because (1) sufficient evidence supported the firearm-possession conviction, (2) the assault and firearm-possession

convictions arose from distinct behavioral incidents, and (3) the district court did not improperly coerce the jury to reach a verdict.

## FACTS

In September 2012, appellant Bernard Miles and two other men were at a house owned by A.C., where Miles sometimes stayed. After the two other men argued, A.C. told one of them to leave, and he complied. Miles and the remaining man, A.S., began fighting with each other. During the fight, A.S. bit Miles on the hand. Someone called the police, and officers responded. Miles left after the police came, saying that he would kill A.S.

Miles returned about an hour later. An altercation erupted again between Miles and A.S., who had remained at A.C.'s house. Miles pointed a gun at A.S., and A.S. noticed that Miles was wearing latex gloves. A.S. screamed, Miles ran out of the room, and A.C. ordered Miles to leave. Several people in the house called the police. At least two of the callers reported that a gun was present.

Responding officers observed Miles in the backyard of A.C.'s house, wearing latex gloves. Officers searched Miles and the back yard, again finding no gun. One officer walked through portions of the house, looking for a gun in plain view, but did not see one. Neither officer searched the garage or neighboring yards. Because they did not find a gun, the officers decided not to arrest Miles.

The next day, A.S. saw Miles in the garage and called police because he thought that Miles might be carrying a gun. Police officers responded, eventually finding Miles nearby. The officers did not find a gun on Miles or on the route between A.C.'s house

2

and the place where they found Miles, but they discovered two rounds of ammunition in A.C.'s garage. A.S. stated that the bullets were not his and that he had not seen them in the garage before. The officers arrested Miles.

The state charged Miles with second-degree assault (use of a firearm), terroristic threats, and prohibited person in possession of a firearm. During the jury trial, A.C. acknowledged that she told a police investigator that Miles had a gun on the night of the fight. But she also testified that she could not remember whether Miles had a gun.

On the second day of the jury's deliberations, the jury foreman sent a note to the district court stating that one juror was "refus[ing] to discuss the facts that have been determined in this case." With the agreement of both counsel, the district court reread portions of the jury instructions to the jury and directed the jury to continue deliberating.

On the third day of deliberations, the jury foreman again sent a note to the district court reporting that the jury had reached verdicts on two of the charges, but that a juror "has stated that he is unwilling to look at the circumstantial evidence at hand" regarding the third charge. Again with the agreement of both counsel, the district court decided to receive the jury's verdicts on the first two charges and then reread its instructions regarding circumstantial and direct evidence before instructing the jury to continue deliberating.

The jury returned guilty verdicts on the second-degree-assault charge and the terroristic-threats charge. The district court then reread its instructions regarding circumstantial and direct evidence and instructed the jury to resume deliberations

regarding the prohibited-person-in-possession-of-a-firearm charge. The jury returned a guilty verdict on the remaining charge.

The district court sentenced Miles to concurrent sentences of 45 months' incarceration on the second-degree-assault charge, 27 months on the terroristic-threats charge, and 60 months on the firearm-possession charge.

## D E C I S I O N

### I.

Miles argues that there is insufficient evidence as a matter of law to support his convictions for second-degree assault and prohibited person in possession of a firearm because there is inadequate evidence that he possessed a gun. When addressing a sufficiency-of-the-evidence challenge, our review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not reverse a conviction for insufficient evidence when the jury, acting with due regard for the presumption of innocence and the necessity of proof beyond a reasonable doubt, could reasonably conclude that the defendant is guilty of the offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

Miles contends that the jury's conclusion that he possessed a gun is unsupported by the evidence because of differences in witnesses' statements about where Miles

brandished the gun, A.C.'s failure to corroborate her statement to police with her trial testimony, and the police officers' failure to find a gun. But A.S.'s testimony alone is sufficient to support Miles's convictions. *See State v. Bliss*, 457 N.W.2d 385, 390 (Minn. 1990) ("It is well established that a conviction can rest upon the testimony of a single credible witness."). And "[i]nconsistencies or conflicts between one witness and another do not necessarily constitute false testimony or serve as a basis for reversal." *State v. Mems*, 708 N.W.2d 526, 531 (Minn. 2006). A.S.'s testimony was corroborated by A.C.'s statement to police and the statements of three separate 911 callers that a gun was present when Miles confronted A.S. in A.C.'s home. Therefore, the evidence is sufficient to support the jury's determination that Miles possessed a firearm during the confrontation in A.C.'s home and that he used it to assault A.S.

Citing *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010), Miles asserts that his conviction must be reversed because it is supported only by circumstantial evidence that allowed reasonable inferences other than guilt. His argument mischaracterizes the nature of the evidence. A.S.'s testimony that Miles pointed a gun at him, A.C.'s statement to police that Miles had a gun, and the statements of the 911 callers that a gun was present during the second altercation at A.C.'s house are direct evidence, not circumstantial evidence. *Compare Black's Law Dictionary* 636 (9th ed. 2009) (defining "direct evidence" as "[e]vidence that is based on personal knowledge or observation"), *with id.* (defining "circumstantial evidence" as "[e]vidence based on inference and not on personal knowledge or observation"). Miles's reference to the standard for evaluating convictions based on circumstantial evidence is therefore misplaced.

**II.**

Miles argues that his convictions for terroristic threats and second-degree assault violate the prohibition on convictions for multiple charges arising from the same behavioral incident. "[I]f a person's conduct constitutes more than one offense . . . , the person may be punished for only one of the offenses . . . ." Minn. Stat. § 609.035, subd. 1 (2012). "When conducting a single-behavioral-incident analysis for two intentional crimes, Minnesota courts consider whether the conduct (1) shares a unity of time and place and (2) was motivated by an effort to obtain a single criminal objective."[1] *State v. Bauer*, 776 N.W.2d 462, 478 (Minn. App. 2009) (citing *State v. Williams*, 608 N.W.2d 837, 841 (Minn. 2000)), *aff'd*, 792 N.W.2d 825 (Minn. 2011).

Miles's offenses do not arise from a single behavioral incident because they do not meet either element of the relevant test. First, they do not share unity of time and place. Although his threat to kill A.S. and his act of pointing a gun at A.S. both occurred inside A.C.'s house, Miles left the house for at least one hour in between. Second, they do not share a single criminal objective. Miles's objective in threatening A.S. was complete at the time he made the statement that he intended to kill A.S. Pointing the gun at A.S. constitutes a separate act that may have had a similar purpose, but nonetheless was a

---

[1] Both parties cite the test for single-behavioral-incident analysis for cases involving intentional and unintentional crimes. But "nonintentional crimes generally include 'public welfare' offenses, such as traffic violations and those that incorporate specific language *negating* an intent element." *State v. Bauer*, 776 N.W.2d 462, 479 (Minn. App. 2009), *aff'd*, 792 N.W.2d 825 (Minn. 2011). Both assault and terroristic threats are intent crimes because both contain an intent element. *See State v. Fleck*, 810 N.W.2d 303, 309-10 (Minn. 2012) (discussing intent requirements for assault); *State v. Bjergum*, 771 N.W.2d 53, 57 (Minn. App. 2009) (discussing intent requirements in terroristic threats statute), *review denied* (Minn. Nov. 17, 2009).

6

separate and distinct instance of that purpose. We therefore conclude that Miles's single-behavioral-incident argument is without merit.

### III.

Miles argues that his convictions must be reversed because the district court instructed the jury to continue deliberating after it sent two notes indicating that one juror was refusing to participate. He alleges that this constitutes improper coercion of the jury. In the alternative, he argues that his counsel's failure to object constitutes ineffective assistance of counsel.

Miles asserts that the district court coerced the jury by instructing it to continue deliberating after it reported it had reached an impasse due to one member's refusal to participate in a portion of its deliberations. "The [district] court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." *State v. Kelley*, 517 N.W.2d 905, 909 (Minn. 1994) (quotation omitted). "A [district] court . . . can neither inform a jury that a case must be decided, nor allow the jury to believe that a 'deadlock' is not an available option." *State v. Jones*, 556 N.W.2d 903, 912 (Minn. 1996). Instead, the district court should "provide [a] careful description of the obligations of the jurors, individually and collectively," and should not leave the jurors without a "sense of the limits of their duty." *Kelley*, 517 N.W.2d at 909.

Miles identifies no improper conduct by the district court. Although he opines that the case was not complicated and that a verdict should have taken less time than it did, he cites no authority supporting the claim that three days of deliberations is unreasonably long. At no point did the district court instruct the jury that it was required to reach a

verdict or that deadlock was not an available option.  In fact, the jury never reported that it was deadlocked.  Rather. It reported that one of its members was refusing to participate. By rereading its jury instructions, the district court only reminded the jurors of their duty to deliberate.  Therefore, the district court did not coerce the jury.

Because there was no coercion, Miles's alternative argument that his trial counsel was ineffective for failing to object to the district court's alleged coercion is baseless, and we decline to address it further.

**Affirmed.**