**Electronically Filed
Supreme Court
SCWC-13-0000118
22-DEC-2016
09:41 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Respondent/Plaintiff-Appellee,

vs.

WILLIAM E. BARRIOS, Petitioner/Defendant-Appellant.

SCWC-13-0000118

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000118; CR. NO. 10-1-0589(1))

DECEMBER 22, 2016

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

William E. Barrios challenges his convictions and resulting 100-year prison sentence for numerous sexual assaults on a minor. We affirm Barrios's convictions, but vacate the sentence since the circuit court did not adequately explain its reasons for imposing multiple consecutive prison terms on Barrios, and since the court appeared to use Barrios's refusal to accept guilt as an aggravating factor in imposing his sentence.

Accordingly, we affirm in part and vacate in part the Intermediate Court of Appeals' March 13, 2015 judgment on appeal and the circuit court's judgment of conviction and sentence, and remand this matter to the circuit court for resentencing before another judge.

## I.  Background

### A.  Circuit Court Proceedings

On November 15, 2010, the State filed an indictment against Barrios in the Circuit Court of the Second Circuit,[1] charging Barrios with 200 felonies relating to Barrios's alleged sexual assault of two minors:  Minor Daughter (MD) and Minor Son (MS).  The charges relating to MD were detailed in counts 1-193, alleging sexual assault in the first degree in violation of HRS § 707-730[2], kidnapping in violation of HRS § 707-720[3], and sexual

---

[1]     The Honorable Joel E. August presided over Barrios's arraignment and bail hearing; the Honorable Rhonda I.L. Loo presided over all other circuit court proceedings.

[2]     HRS § 707-730 (Supp. 2009) provides in pertinent part:

    (1) A person commits the offense of sexual assault in the first degree if:
         (a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion;
         (b) The person knowingly engages in sexual penetration with another person who is less than fourteen years old;
         . . . .
    (2) Sexual assault in the first degree is a class A felony.

[3]     HRS § 707-720 (Supp. 2009) provides in pertinent part:

    (1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another

                                                        (continued...)

2

assault in the third degree in violation of HRS § 707-732.[4]  The
charges relating to Barrios's offenses against MS were detailed
in counts 194-200, alleging sexual assault in the first degree,
kidnapping, and attempted sexual assault in the first degree in
violation of HRS §§ 705-500[5] and 707-730.  Barrios pleaded not

---

[3](...continued)
        person with intent to:
        . . . .
                (c) Facilitate the commission of a felony or
                flight thereafter;
                (d) Inflict bodily injury upon that person or
                subject that person to a sexual offense[.]

[4]     HRS § 707-732 (Supp. 2009) provides in pertinent part:

        (1) A person commits the offense of sexual assault in
        the third degree if:
                (a) The person recklessly subjects another
                person to an act of sexual penetration by
                compulsion;
                (b) The person knowingly subjects to sexual
                contact another person who is less than fourteen
                years old or causes such a person to have sexual
                contact with the person. . . .
        (2) Sexual assault in the third degree is a class C
        felony.

[5]     HRS § 705-500 (1993) provides:

        (1) A person is guilty of an attempt to commit a crime
        if the person:
                (a) Intentionally engages in conduct which would
                constitute the crime if the attendant
                circumstances were as the person believes them
                to be; or
                (b) Intentionally engages in conduct which,
                under the circumstances as the person believes
                them to be, constitutes a substantial step in a
                course of conduct intended to culminate in the
                person's commission of the crime.
        (2) When causing a particular result is an element of
        the crime, a person is guilty of an attempt to commit
        the crime if, acting with the state of mind required
        to establish liability with respect to the attendant
        circumstances specified in the definition of the
        crime, the person intentionally engages in conduct
        which is a substantial step in a course of conduct
        intended or known to cause such a result.
                                                (continued...)

3

guilty and demanded a jury trial. Barrios's trial began on October 3, 2012, and lasted until November 15, 2012, when the jury returned its verdict.

### 1.   Trial

The State's testimony at trial established that MD and MS--Mother's children from a prior marriage--were under the age of fourteen throughout the period of the alleged sexual assaults. Mother and Barrios began dating, and in 2004, they and the children moved in together.

Mother testified that she and Barrios both used crystal methamphetamine extensively. Mother testified that during the drug use, her relationship with Barrios was often violent, once resulting in two fractured ribs after he punched her. Mother also testified that Barrios was often violent with MD.

Mother testified that she began to observe physical interactions between Barrios and MD, which worsened as Barrios's drug use increased. Mother stated that she witnessed MD using her hands to masturbate Barrios "for years. It happened every time we used drugs." Mother also testified that she witnessed MD "put[ting] her mouth on [Barrios's] penis and giv[ing] him oral sex . . . . eight times a month minimum." MD and Mother both testified that Barrios would often force MD to watch pornography

---

[5](...continued)
        (3) Conduct shall not be considered a substantial step
        under this section unless it is strongly corroborative
        of the defendant's criminal intent.

with him.

MD further testified that beginning in the summer of 2004, Barrios "made me touch his penis with my hand. And he um, made me put his penis in my mouth and um, he um, he would um, touch my breasts and bite my breasts and he would put his mouth on my vagina too." MD testified that between July and December of 2004, this happened at least once a month, but that at other times, such as late 2005 through early 2006, it happened far more frequently, "like once a week at least."

MD testified that on some occasions while Barrios sexually assaulted her, he used physical force on her, such as holding her down, punching her, and pulling on her hair or her neck. Both Mother and MD testified that on at least one occasion, Barrios forced them both to perform oral sex on him at the same time.

On cross-examination, MD testified that she was not certain of the exact number of times Barrios did certain things to her, and she was "trying to estimate, but, like, conservatively estimate because I know it happened a lot."

MS also testified to several instances in which Barrios forced MS to touch or suck on Barrios's penis. For example, MS further testified that Barrios came into MS's room, threw MS from his bed, punched MS in the stomach, and then made MS suck his penis. MS also testified that if he did not do certain things, like clean his room or train for football, Barrios would punch

him.  MS further testified that on one occasion, Barrios hit him on the head with a screwdriver, and on another occasion, Barrios made MS kneel on Hawaiian salt "for a long time" after MS had gotten into trouble.

After the State completed its case, the defense rested without calling any witnesses or presenting any evidence.

In closing, the State highlighted that Barrios's abuse of MD occurred when MD was between eight and thirteen years old, and his abuse of MS occurred while MS was between eight and ten years old.  The State also highlighted that "[e]ach act of sexual penetration constitutes a separate offense."

Barrios argued that the State's evidence consisted solely of "nonsensical, inconsistent stories," and that the State had not produced any physical evidence of the alleged assaults.  Barrios argued that the State was attempting to influence the jury by appealing to their sense of pity for the complaining witnesses:  "You know what they teach you in law school:  If you don't have the evidence, you show the jury the law.  If you don't have the law, you show the jury the evidence.  If you don't have either, you focus on emotions, passions and prejudice."

In its rebuttal, the State responded that "[w]e're just asking you to hold this Defendant responsible based on the evidence that was presented in this case."  The State also argued:  "Now, when a child is physically injured and needs help, they usually go to a doctor or they go to the hospital.  When a

6

child needs spiritual healing, they go to church.  When a child needs justice, they come before a jury."  At this point Barrios objected based on "the inflammatory nature of these comments." The circuit court overruled the objection.

On November 15, 2012, the jury found Barrios guilty of 146 felonies:  72 counts of sexual assault in the first degree, 72 counts of sexual assault in the third degree, and 2 counts of kidnapping.  All of the charges for which the jury returned a guilty verdict related to MD; Barrios was acquitted of all of the charges relating to MS.

### 2.  Sentencing

The State filed a motion for consecutive terms of imprisonment for certain of Barrios's convictions, for a total of eighty years' imprisonment.

At the sentencing hearing, Barrios's counsel noted that Barrios had not submitted a letter of apology for the presentence investigation (PSI) report upon the advice of his counsel because he was planning to appeal his convictions.  Barrios's counsel also acknowledged receipt of the PSI report and attached addendum, which included a letter written by MS and nine letters written by MS's and MD's family members.

The State then asked the court to allow MD to speak, MD's grandmother (Grandmother) to read aloud a letter she had written, and for a letter written by MS to be read aloud. Barrios objected to MS's letter being read because it had already

been submitted for inclusion in the PSI report and as such was duplicative and unnecessary. The court allowed all three of the State's requests. MD spoke of her experiences, saying, "[a]s a child in school, when we were asked to create little monsters, I always had the urge to recreate an image of [Barrios]." She referred to Barrios repeatedly as a monster and concluded by saying that she had "rise[n] above the abuse and put away the monster."

Finally, the circuit court addressed Barrios:

Mr. Barrios, you are the nightmare that came true. 146 counts. The jury has spoken. A jury of your peers convicted you of 72 A felonies, two B felonies, 72 C felonies; and now we are here for you –- for me to pass judgment on you for the crimes you committed against your family.

Under 706-606, the Court needs to consider what kind of sentence is appropriate, and I can think of no crime as horrendous as the one that you imposed upon this family other than murder. So many A felonies. This young child was a child, a baby. I think she was eight years old when the abuse started. Eight years old, a second grader, and it went on for years and years and years. You groomed her. You used threats, You used manipulation. You used mind games. You molded her to be a victim, and I'm so proud that she's grown into such a wonderful, intelligent, smart, and strong young woman, and she will be a smart, intelligent, and strong adult when she gets older.

The history and circumstances of the crime that the Court needs to look upon can be no more serious crime than the 72 A felonies that you're looking at, a total of 146 different counts. You have no respect for the law.

You have never exhibited any kind of remorse or responsibility for any of your actions. I believe at one point I was hearing about, oh, they made up the story to get me out of the house, or something along these lines.

The Court needs to consider just punishment for the amount of felonies that you are facing. The Court needs to consider adequate deterrence for your criminal conduct. You have convictions out of California. Your life of crime started back in '85. You are a sex offender out of California and never bothered to register in the State of Hawaii.

You put a child through what I can only think is the most unspeakable, unthinkable things that a child has to go through. You introduced her to pornography, to masturbation, to fellatio, cunnilingus, you kidnapped her, held her against her will, just deviant sexual behavior, and, yes, you will be characterized as a child molester, a sexual predator because that's exactly what you are. You are a monster. You are a monster.

The State's asking for consecutive sentences. They're saying 80 years will be enough to protect the public from further crimes of you. [Barrios's counsel] is saying this is basically one big class A felony, and I should give you 20 years and let you go to prison for 20 years, and that's just punishment.

But like I said earlier, the jury has spoken. The jury convicted you of crimes of fellatio, of cunnilingus, of kidnapping, of sexual penetration, the jury convicted you of all of these crimes, all of these crimes.

I think back of the testimony that I heard over those weeks of trial, about how you started off with handjobs and pornography, oral sex on the poor victim, making her do all kinds of things to you, and I think what bothered me the most was the tandem sexual acts with the mother and the child that you made them perform, with one giving you a blowjob and the other one manipulating your testicles, and I guess when they got tired, they tag teamed and they switched positions. That was one of the most deplorable things I have ever heard of a man doing to a child and mother. A child and a mother at the same time.

You showed no remorse. You showed no remorse then, and you show no remorse now, and I know [defense counsel] has suggested that you not say anything. I respect that. That is your right. But your behavior is that of a twisted, sick person. As sick as I can think back in all my years that I've been on the bench

9

that I have ever seen.  That I have ever seen.  The trauma that you've inflicted will have long-lasting effects.

Not only about you, Mr. Barrios, but about this family that you tore apart, and I'm so proud that they're trying to mend and to get themselves back together and to move on.  And I'm proud that they're moving on and making something of themselves.  These are wonderful children, and they will grow up to be wonderful adults.  Wonderful adults.

It is the hope of this Court for the safety of all children that you should never see the outside of a prison's walls.

The circuit court then imposed a sentence of 100 years' imprisonment[6] and required Barrios to make Crime Victim Compensation fee payments.

---

[6]   The details of the sentence were as follows:

- Counts 1 - 4 (sex assault in the first degree, penile penetration):  twenty years;
- Count 5 (sex assault in the third degree, lesser included offense, penile penetration):  five years, to run concurrently;
- Counts 21-33 (sex assault in the first degree, fellatio):  twenty years, these counts to run concurrently but consecutively to the other sentences;
- Counts 34-40 (sex assault in the third degree, lesser included offense, fellatio):  five years to run concurrently;
- Counts 41-42 (kidnapping):  ten years concurrently but consecutively to all other sentences;
- Counts 46-65 (sex assault in the third degree, making minor touch his penis with her hand):  five years concurrent and concurrent to all other sentences;
- Counts 66-89 (sex assault in the first degree, fellatio):  twenty years concurrent but consecutive to all other sentences;
- Counts 90-120 (sex assault in the first degree, cunnilingus):  twenty years concurrent but consecutive to all other sentences;
- Counts 130-153 (sex assault in the third degree, lesser included offense, and sex assault in the third degree, causing minor to touch his penis with minor's hand, touching minor's breasts and buttocks):  five years concurrent but consecutive to all other sentences;
- Counts 174-193 (sex assault in the third degree, touching minor's breast with his mouth):  five years concurrent but consecutive to all other sentences.

**B.   ICA Appeal**

Barrios appealed and argued, inter alia, that (1) "The Prosecutor's comment that a child in need of justice goes to a jury was inflammatory and arose to egregious prosecutorial misconduct warranting a new trial[;]" (2) "The circuit court erred in allowing people other than [MD] to be heard and recommend Mr. Barrios' disposition at the sentencing hearing[;]" and (3) "The circuit court abused its discretion in sentencing Mr. Barrios to prison for 100 years."  (Capitalization omitted).

The ICA held that the prosecutor's remark during closing did not constitute prosecutorial misconduct when viewed in the context of the whole closing argument and that the prosecutor's comment was "a proper appeal to the jury to do 'justice' based on the evidence that was introduced during the trial."

Next, the ICA concluded that Barrios waived any objection to Grandmother reading her letter at the sentencing hearing because he had failed to object when it was requested by the State.  Even if Barrios had not waived this objection, the ICA reasoned that nothing in HRS § 706-604 precludes people other than the defendant and the victim from being heard at a sentencing hearing.

Finally, the ICA determined that the circuit court did not abuse its discretion by imposing its sentence and by calling Barrios a "monster" and "sick" and "twisted."  The ICA further

11

concluded that the circuit court sufficiently articulated a
"meaningful rationale" for the sentence in light of the factors
enumerated in HRS § 706-606.

The ICA therefore affirmed Barrios's conviction and
sentence. On March 13, 2015, the ICA entered its judgment on
appeal. On May 7, 2015, Barrios timely filed his application for
writ of certiorari.

## II. Standards of Review

### A. Prosecutorial Misconduct

> Allegations of prosecutorial misconduct are reviewed
> under the harmless beyond a reasonable doubt standard,
> which requires an examination of the record and a
> determination of whether there is a reasonable
> possibility that the error complained of might have
> contributed to the conviction. Misconduct of a
> prosecutor may provide grounds for a new trial if the
> prosecutor's actions denied the defendant a fair
> trial.

State v. Mainaaupo, 117 Hawai'i 235, 247-48, 178 P.3d 1, 13-14
(2008) (quotation marks and citations omitted).

### B. Sentencing

> A sentencing judge generally has broad discretion in
> imposing a sentence. The applicable standard of
> review for sentencing or resentencing matters is
> whether the court committed plain and manifest abuse
> of discretion in its decision. Factors which indicate
> a plain and manifest abuse of discretion are arbitrary
> or capricious action by the judge and a rigid refusal
> to consider the defendant's contentions. And,
> generally, to constitute an abuse it must appear that
> the court clearly exceeded the bounds of reason or
> disregarded rules or principles of law or practice to
> the substantial detriment to the litigant.

State v. Kong, 131 Hawai'i 94, 101, 315 P.3d 720, 727 (2013).

Further, "[t]he weight to be given the factors set

forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." Id. (quoting State v. Akana, 10 Haw. App. 381, 386, 876 P.2d 1331, 1334 (1994)).

### III. Discussion

Barrios's application for certiorari presents three questions:

> Did the ICA gravely err when it ignored nearly thirty years of precedent and allowed the prosecutor to compare jurors to doctors and priests who care for and comfort children, and ask them to give the child witnesses "justice" by finding Mr. Barrios guilty?
>
> Did the ICA gravely err in upholding the [sic] Judge Loo's use of non-victim statements at the sentencing hearing?
>
> Was the imposition of 100 years of imprisonment with the hope that Mr. Barrios dies in prison an abuse of discretion that the ICA should have readily identified and remedied?

We find that the prosecutor's remark in closing argument was improper, but harmless, and that the circuit court did not err in allowing the letters to be read during the sentencing hearing. However, we conclude that the circuit court abused its discretion in imposing consecutive sentences totaling 100 years in prison.

### A. The Prosecutor's Remark that "When a Child Needs Justice, They Come Before a Jury" During Closing Argument was Improper, but Harmless.

In his application, Barrios argues that the following remark by the prosecutor at the end of the State's rebuttal

13

closing argument was improper: "Now, when a child is physically injured and needs help, they usually go to a doctor or they go to the hospital. When a child needs spiritual healing, they go to church. When a child needs justice, they come before a jury." Specifically, Barrios argues that this was an appeal to the jurors' "abstract sense of justice" and diverted the jury from its duty to decide the case on the evidence presented.

When addressing allegations of prosecutorial misconduct, we first determine whether the statements were improper and, if so, determine whether the misconduct was harmless. See State v. Tuua, 125 Hawaiʻi 10, 14, 250 P.3d 273, 277 (2011). "During closing argument, a prosecutor 'is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence.'" Id. (quoting State v. Clark, 83 Hawaiʻi 289, 304, 926 P.2d 194, 209 (1996)). "Although a prosecutor has wide latitude in commenting on the evidence during closing argument, it is not enough that . . . his comments are based on testimony 'in evidence'; his comments must also be 'legitimate.' A prosecutor's comments are legitimate when they draw 'reasonable' inferences from the evidence." Tuua, 125 Hawaiʻi at 14, 250 P.3d at 277 (quoting Mainaaupo, 117 Hawaiʻi at 253-54, 178 P.3d at 19-20) (internal citations omitted). Finally, "it is 'generally recognized under Hawaiʻi case law that prosecutors are bound to refrain from expressing their personal views as to a defendant's guilt or the credibility of

14

witnesses.'"  Tuua, 125 Hawai'i at 14, 250 P.3d at 277 (quoting State v. Cordeiro, 99 Hawai'i 390, 424-25, 56 P.3d 692, 726-27 (2002)).

We conclude that the prosecutor's remark improperly appealed to the jury's emotions.  See U.S. v. Aviles-Colon, 537 F.3d 1, 24 (1st Cir. 2008) ("[I]t is improper to appeal to the jury's emotions and role as the conscience of the community.") (internal quotation marks and citation omitted).  The remark, by comparing the jury to hospitals and churches, "appeared to invite the jury to base its verdict on considerations other than the evidence in the case."  State v. Mars, 116 Hawai'i 125, 143, 170 P.3d 861, 879 (App. 2007) (finding that the prosecutor's comment that "[t]his community is measured by how we treat its weakest members" was improper).

An improper statement warrants a new trial if "there is a reasonable possibility that the error complained of might have contributed to the conviction."  Tuua, 125 Hawai'i at 16, 250 P.3d at 279 (quoting State v. Hauge, 103 Hawai'i 38, 47, 79 P.3d 131, 140 (2003)).  To assess whether a prosecutor's improper statement was harmless, we evaluate three factors:  "(1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant."  Tuua, 125 Hawai'i at 16, 250 P.3d at 279 (internal quotation marks and citation omitted).

We find that there was no reasonable possibility that

15

the prosecutor's remark contributed to Barrios's conviction.

First, while we have held that improper comments in closing argument can constitute prosecutorial misconduct, the remark here does not rise to the level of misconduct found in those cases. See, e.g., State v. Marsh, 68 Haw. 659, 660-61, 728 P.2d 1301, 1302-03 (1986) (finding prosecutorial misconduct and remanding for a new trial based on prosecutor's statement "I'm sure [the defendant] committed the crime"). Further, the remark was made as part of an otherwise appropriate argument, asking the jury "to hold [Barrios] responsible based on the evidence that was presented in this case."

Second, the circuit court overruled defense counsel's objection after the remark was made, and therefore no curative instruction was given regarding the prosecutor's remark. However, immediately prior to the parties' closing arguments, the court instructed the jury as follows:

> Ladies and gentlemen, at this time the attorneys will be making their closing arguments. Neither what they will say or any visual aids they may use are in evidence. The only evidence which you must consider in deliberations comes from the witness's testimony, and from the exhibits which are in evidence.

Thus, the court informed the jury that it should not consider the prosecutor's closing argument as evidence.

Finally, there was strong evidence to support Barrios's convictions. MD testified in detail to numerous instances of sexual and physical abuse by Barrios from 2004 to 2009. Mother corroborated much of MD's testimony, testifying that she either

16

witnessed the abuse or was forced to participate.  The prosecutor's remark "taken in this context does not reach the level of reversible error."  State v. Klinge, 92 Hawaiʻi 577, 593, 994 P.2d 509, 525 (2000) (finding the prosecutor's comment "[t]he people's safety is the highest law" was harmless "in light of the strength of the evidence against [the defendant]").

Therefore, although the prosecutor's comment was an improper appeal to emotions, the comment was harmless beyond a reasonable doubt and does not warrant a new trial.

**B.    The Circuit Court did Not Err in Allowing Grandmother to Read her Letter and in Allowing MS's Letter to be Read During the Sentencing Hearing.**

Barrios argues that the circuit court abused its discretion in allowing MS's letter to be read aloud during the sentencing hearing because, after Barrios was acquitted of all of the charges pertaining to MS, MS cannot be considered a "victim," and the circuit court "cannot punish Mr. Barrios for acquitted charges."  Barrios also argues that the circuit abused its discretion by allowing Grandmother to read her letter at the hearing.  According to Barrios, HRS § 706-604[7] protects

---

[7]     HRS § 706-604 (1993 & Supp. 2009) provides:

(1) Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition.
(2) The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to

(continued...)

17

defendants by precluding the sentencing court from considering any unfounded or inaccurate facts, and Grandmother "offered no accurate or new information to assist the sentencing court[,]" instead "launch[ing] a needless attack on Mr. Barrios that clearly influenced the sentencing court."

We find that the circuit court did not abuse its discretion in allowing Grandmother to read her letter.

HRS § 706-604 requires the circuit court to afford an opportunity to the defendant and the victim to be heard at sentencing, and where the crime is a homicide or the victim is otherwise unavailable, the circuit court must permit the victim's family to be heard. See HRS § 706-604(1), (3).

_____

(...continued)
        controvert or supplement them.  The court shall amend
        or order the amendment of the report upon finding that
        any correction, modification, or addition is needed
        and, where appropriate, shall require the prompt
        preparation of an amended report in which material
        required to be deleted is completely removed or other
        amendments, including additions, are made.
        (3) In all circuit court cases, the court shall afford
        a fair opportunity to the victim to be heard on the
        issue of the defendant's disposition, before imposing
        sentence.  The court, service center, or agency
        personnel who prepare the pre-sentence diagnosis and
        report shall inform the victim of the sentencing date
        and of the victim's opportunity to be heard.  In the
        case of a homicide or where the victim is otherwise
        unable to appear at the sentencing hearing, the
        victim's family shall be afforded the fair opportunity
        to be heard.
        (4) If the defendant is sentenced to imprisonment, a
        copy of the report of any pre-sentence diagnosis or
        psychological, psychiatric, or other medical
        examination, which shall incorporate any amendments
        ordered by the court, shall be transmitted immediately
        to the department of public safety.

18

HRS § 706-602[8] provides information to be included in a PSI report, and its commentary provides that "[a] defendant is protected against the inclusion of unfounded facts, derogatory information, statements and conclusions by the provision of § 706-604 providing for notice and opportunity to controvert."  HRS § 706-604(2) (Supp. 2009) provides for notice and an opportunity to controvert:

> The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, <u>if the</u>

---

[8]     HRS § 706-602 (1993) provides:

(1) The pre-sentence diagnosis and report shall be made by personnel assigned to the court or other agency designated by the court and shall include:
    (a) An analysis of the circumstances attending the commission of the crime;
    (b) The defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, education, occupation, and personal habits;
    (c) Information made available by the victim or other source concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any physical or psychological harm or financial loss suffered;
    (d) Information concerning defendant's compliance or non-compliance with any order issued under section 806-11; and
    (e) Any other matters that the reporting person or agency deems relevant or the court directs to be included.
(2) The court personnel or agency shall give notice of the Crime Victim Compensation Act, the application for compensation procedure, and the possibility of restitution by the defendant to all victims of the convicted defendant's criminal acts.

19

> defendant or the prosecuting attorney so requests, to controvert or supplement them.  The court shall amend or order the amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made.

Thus, HRS §§ 706-602 and -604 protect defendants from unfounded facts and derogatory information by requiring notice and an opportunity to controvert the information "if the defendant or the prosecuting attorney so requests."  HRS § 706-604(2).

Here, Grandmother's and MS's letters were attached in an addendum to the PSI report the day before the sentencing hearing.  At the beginning of the sentencing hearing, Barrios had the opportunity to note any errors or controvert information included in the PSI report:

> I'll acknowledge for the record receipt of a Presentence Report, acknowledge the contents thereof. I have a couple of corrections, clarifications to make on that.  I'll acknowledge receiving an addendum to that Presentence Report, as well as a number of letters this morning.  We are prepared to proceed.
> . . . .
> Relative to the corrections in the PSI, your Honor, I would just like to make a correction regarding a notation but the -- or the restraining order that's against my client, it was actually dissolved a while back.  Essentially, the Presentence Report notes that there's still one in existence.  The other correction that I would make on the Presentence Report is that I do not believe [Barrios] is subject to a repeat offender status, which was put in the Presentence Report.

(Emphasis added).  Barrios acknowledged receipt of the PSI and its addendum and that, having reviewed this information, he

20

indicated that he was prepared to proceed.

Barrios is incorrect that HRS §§ 706-602 and -604 preclude family members of the victim from testifying at sentencing. The plain language of HRS § 706-604 requires that the sentencing court allow an opportunity for the defendant and the victim to testify or, in the case of homicide, allow the victim's family to testify. It does not, however, preclude the sentencing court from allowing other family members of the victim to speak. Indeed, HRS § 706-602(1)(c) specifically allows PSI reports to include "[i]nformation made available by the victim <u>or other source</u> concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any physical or psychological harm or financial loss suffered." (emphasis added). It also allows "[a]ny other matters that the reporting person or agency deems relevant or the court directs to be included." HRS § 706-602(1)(e).

Thus, HRS §§ 706-602 and -604 indicate that the court may consider information given by family members of the victim concerning the effect of the defendant's crime. Moreover, we have stated that:

> A sentencing judge generally has broad discretion in imposing a sentence, and the sentence thus imposed should be tailored to the particular circumstances of a defendant's case. To achieve this end, there is a legitimate need to provide a sentencing judge with complete information about the defendant. Indeed, a sentencing judge is required to consider specific statutory factors in determining the sentence to be imposed. Therefore, <u>the scope of a sentencing judge's inquiry into a defendant's background is very broad</u>

21

and limitations on the kind and/or source of information the court may consider are not lightly imposed.

Keawe v. State, 79 Hawai'i 281, 285-86, 901 P.2d 481, 485-86 (1995) (quotation marks and citations omitted; emphasis added).

Therefore, there was no error in Grandmother's letter being included in the PSI, and in the circuit court considering the letter in sentencing Barrios. Nor was it error for the circuit court to allow Grandmother to read her letter during the sentencing hearing.

With regard to MS's letter, Barrios argues that the circuit court impermissibly punished him for acquitted charges. Although MS's letter makes an oblique reference to the accuracy of the verdict, most of MS's comments focused on the impact of Barrios's conduct on MD.

Though a sentencing judge has broad discretion in imposing a sentence, "a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment." State v. Nunes, 72 Haw. 521, 526, 824 P.2d 837, 840 (1992). "[A] palpable claim of error arises when a sentencing court cites an uncharged crime as a factor in its sentencing decision." State v. Mikasa, 111 Hawai'i 1, 8, 135 P.3d 1044, 1051 (2006). Thus, where the remarks of the sentencing court "clearly indicated that an improper ground was an aggravating factor in the sentencing decision[,]" the sentence must be vacated. Id. at 9, 135 P.3d at 1052 (internal quotations, brackets, and citation omitted).

An examination of the circuit court's language in delivering Barrios's sentence indicates that the court did not consider the acquitted charges related to MS, but considered only the charges relating to MD, of which Barrios was convicted:

> This young child was a child, a baby.  I think <u>she was eight years old</u> when the abuse started. . . .  You groomed <u>her</u>. . . .  You molded <u>her</u> to be a victim, and I'm so proud that she's growing into such a wonderful, intelligent, smart, and strong young woman, and she will be a smart, intelligent, and strong adult when she gets older.
> . . . .
> You put <u>a child</u> through what I can only think is the most unspeakable, unthinkable things . . . .  You introduced <u>her</u> to pornography, to masturbation[.]

(Emphases added).

Moreover, when delivering its sentence, at no point did the circuit court explicitly refer to any acquitted charges pertaining to MS.  The circuit court did refer to other members of MD's family, but only in the context of how Barrios's crimes against MD "tore apart" the family.  Indeed, there is nothing to indicate that the circuit court based its decision to impose consecutive sentences on any charges pertaining to MS for which Barrios was acquitted, and thus the court did not err with regard to allowing the letter to be read.[9]

**C.    The Circuit Court Abused its Discretion in Imposing Consecutive Sentences that Resulted in a Total 100-year Prison Sentence.**

---

[9]    In situations in which a sentencing court receives information referencing non-adjudicated conduct or conduct for which there has been an acquittal, we note that the court may wish to state on the record that it did not consider the conduct when reaching its decision.

Barrios argues that the circuit court abused its discretion in imposing consecutive sentences because the circuit court did not adequately address the factors under HRS § 706-606, imposed the sentence out of "anger and vehemence shared by the prosecution's non-victims," and because the 100-year sentence creates a disparity between Barrios and other defendants who were charged with only single felonies under the continuous sexual assault of a minor statute, and who received much shorter sentences for similar conduct.

A court must consider the factors set forth in HRS § 706-606 "in determining whether the terms imposed are ordered to run concurrently or consecutively[.]"  HRS § 706-668.5(2) (1993).  HRS § 706-606 (1993) provides:

> The court, in determining the particular sentence to be imposed, shall consider:
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) The need for the sentence imposed:
>     (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
>     (b) To afford adequate deterrence to criminal conduct;
>     (c) To protect the public from further crimes of the defendant; and
>     (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) The kinds of sentences available; and
> (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

"Absent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before

24

imposing concurrent or consecutive terms of imprisonment under HRS § 706-606." Kong, 131 Hawaiʻi at 102, 315 P.3d at 728 (internal brackets, quotation marks, and citation omitted). However, "circuit courts <u>must state on the record</u> at the time of sentencing the reasons for imposing a consecutive sentence." Id. (internal quotation marks and citation omitted; emphasis in original). Even if the sentencing court addresses the HRS § 706-606 factors, and states its reasons on the record, the sentence must be vacated if the court relies upon any improper factors. See Mikasa, 111 Hawaiʻi at 9, 135 P.3d at 1052.

Although the circuit court addressed several of the required HRS § 706-606 factors in deciding to impose consecutive sentences, we conclude that the court abused its discretion by (1) not adequately explaining its decision to impose multiple consecutive sentences totaling 100 years of imprisonment and (2) improperly relying upon Barrios's refusal to admit guilt given his desire to appeal his convictions. Barrios's sentence must be vacated on these bases, and we remand the case to the circuit court for resentencing.

1. **The circuit court was not limited to the available sentence under HRS § 707-733.6**

Barrios argues that the circuit court abused its discretion in imposing his sentence because it did not adequately consider the "nature and circumstances" of Barrios's offense under HRS § 706-606(1), and "[t]he need to avoid unwarranted sentence disparities among defendants with similar records who

25

have been found guilty of similar conduct" under HRS § 706-606(4). Essentially, Barrios argues that because the State could have charged him with a single felony for the same conduct under HRS § 707-733.6[10] (Continuous sexual assault of a minor under the age of fourteen years), his sentence should have been limited to the available sentence under that statute, i.e., twenty years. According to Barrios, his 100-year sentence was thus "wildly disproportionate."

Barrios's reliance on HRS § 707-733.6 is misplaced. First, Barrios highlights only the portion of HRS § 706-606(4)

---

[10] HRS § 707-733.6 (Supp. 2009) provides:

(1) A person commits the offense of continuous sexual assault of a minor under the age of fourteen years if the person:
    (a) Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and
    (b) Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, while the minor is under the age of fourteen years.

(2) To convict under this section, the trier of fact, if a jury, need unanimously agree only that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number.

(3) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section, unless the other charged offense occurred outside the period of the offense charged under this section, or the other offense is charged in the alternative. A defendant may be charged with only one count under this section, unless more than one victim is involved, in which case a separate count may be charged for each victim.

(4) Continuous sexual assault of a minor under the age of fourteen years is a class A felony.

that states courts should avoid disparate sentences among defendants found guilty of "similar conduct," but fails to acknowledge that the provision also states the need is to avoid disparities among defendants "with similar records who have been found guilty of similar conduct." HRS § 706-606(4) (emphasis added). Although Barrios argues that defendants convicted under HRS § 707-733.6 would only receive a maximum of twenty years' imprisonment, he does not discuss any convictions under that statute where the defendant had "similar records" to Barrios. Specifically, there were thirty-three different factors listed in Barrios's PSI report recommending a prison term, and Barrios had numerous prior convictions, including convictions for battery, possession of controlled substances, and at least two convictions for indecent exposure in California.

Moreover, Barrios cites to no authority, nor does there appear to be any, that requires the State to charge defendants with a single felony under HRS § 707-733.6 rather than individual felonies of sexual assault, if the State believes it has sufficient evidence to get convictions under the individual counts. Indeed, the legislative history of HRS § 707-733.6 indicates that the statute was intended to make it easier for the State to obtain convictions in cases where there may not be enough evidence to prove with specificity individual counts of sexual assault.

Although the legislative history of HRS § 707-733.6 is

27

limited, the statute was enacted in 2006 to replace HRS § 707-733.5. The relevant portions of HRS §§ 707-733.5 and -733.6 are substantively identical,[11] and therefore the legislative history of HRS § 707-733.5 is instructive. HRS § 707-733.5 was enacted in 1997 pursuant to Act 379, which stated:

> The legislature finds that sexual assault in the first, second, third, and fourth degrees, in the manner prohibited under the Hawai'i penal code, are not "continuing offenses" in that they represent distinct acts and, therefore, separate offenses. The legislature finds, however, that many young children who have been sexually abused over an extended period of time may be unable to specifically recall or identify dates, instances, or circumstances

---

[11]    HRS § 707-733.5, which was repealed in 2006, provided (with differences between this statute and HRS § 707-733.6 emphasized):

> (1) Any person who:
>     (a) Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and
>     (b) Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, while the minor is under the age of fourteen years.
> is guilty of the offense of continuous sexual assault of a minor under the age of fourteen years.
>
> (2) To convict under this section, the trier of fact, if a jury, need unanimously agree only that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number.
>
> (3) No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section, unless the other charged offense occurred outside the time frame of the offense charged under this section, or the other offense is charged in the alternative. A defendant may be charged with only one count under this section, unless more than one victim is involved, in which case a separate count may be charged for each victim.
>
> (4) Continuous sexual assault of a minor under the age of fourteen years is a class A felony.

28

> surrounding the abuse.
>
> As discussed by Justice Nakayama in a dissenting opinion to the Hawai‘i Supreme Court's recent decision in <u>State v. Arceo</u>, [84 Hawai‘i 1, 928 P.2d 843 (1996)], the prosecution's key witness in cases involving the sexual assault of a minor is usually a child with limited ability to recall alleged facts with specificity. Justice Nakayama argued that "this is particularly problematical and evident in cases involving sexual assault by a parent, where the minor may be of tender years, under the exclusive control of the parent or guardian, and when the abuse has occurred on a number of occasions over a period of time."
> . . . .
> Justice Nakayama urged the legislature to enact a "continuous sexual abuse of a minor" statute, similar to the one enacted by the State of California, <u>to address the problems inherent in the criminal prosecution of sexual abuse cases involving young children who are unable to specify the time, places, or circumstances of each act</u>. The legislature agrees that there is a need for such a statute[.]

1997 Haw. Sess. Laws, Act 379, § 1 at 1191-92 (emphases added).

Thus, the intent behind the continuous sexual assault of a minor statute is not, as Barrios contends, to limit the available sentence in cases where the State is able to prove beyond a reasonable doubt specific counts of sexual assault of a minor. Instead, the intent is to ensure that offenders can be convicted even when the complaining witness is unable to testify with specificity regarding the time, place, and circumstances of each and every specific event.

Here, the State believed it was able to obtain convictions in individual counts of sexual assault, and charged Barrios accordingly. The State was able to do so in 146 of the

29

200 counts, and Barrios has not raised any issues regarding the sufficiency of the evidence by which the jury convicted him of those 146 counts.

As such, it was within the circuit court's discretion to sentence Barrios according to the number of felonies for which he was convicted instead of following the required sentence for a single conviction of continuous sexual assault.

**2.  The circuit court did not adequately explain its rationale for imposing consecutive sentences**

In affirming Barrios's sentence, the ICA relied upon the fact that the circuit court had adequately addressed the factors under HRS § 706-606.  However, a sentencing court is additionally required to explain on the record its reasoning based on the HRS § 706-606 factors to ensure that its "decision to impose consecutive sentences was deliberate, rational, and fair."  Hussein, 122 Hawai'i at 510, 229 P.3d at 328.  We find that, here, the circuit court did not adequately explain its rationale for imposing consecutive sentences.

In Hussein, this court explained the "dual purposes" served by requiring that circuit courts "state on the record at the time of sentencing the reasons for imposing a consecutive sentence":

> First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate.  An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court

30

> to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public.
>
> Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors. It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term. Hence, reasons confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair.

122 Hawai'i at 509-10, 229 P.3d at 327-28.

In Kong, this court applied these principles to determine whether the circuit court adequately explained its reasoning in sentencing the defendant. The circuit court imposed two sentences to run consecutively, stating:

> Taking into consideration all of the factors set forth in [HRS §] 706-606, including the extensive record of the defendant, which includes six burglary convictions, . . . ten felonies, which represents a lot of harm in our community.
>
> The Court is going to impose the following sentence in this matter. The defendant will be committed to the care and custody of the Director of the Department of Public Safety for a period of ten years on Count 1, five years on Count 2. . . .
>
> In view of his extensive criminality, the Court is going to make these counts run consecutive for a total of fifteen years, mittimus forthwith, full credit for time served.

131 Hawai'i at 99, 315 P.3d at 725.

31

The defendant argued that the circuit court did not adequately address the HRS § 706-606 factors to warrant imposing consecutive sentences.  Id. at 102, 315 P.3d at 728.

This court held that "the sentencing court is not required to articulate and explain its conclusions with respect to every factor listed in HRS § 706-606[,]" but rather must "articulate its reasoning only with respect to those factors it relies on in imposing consecutive sentences."  Id. at 102, 315 P.3d at 728.  We noted that the circuit court's discussion of the defendant's "extensive criminality" related directly to the statutory factors in HRS § 706-606(1).  Id. at 103, 315 P.3d at 729.  We then concluded that the court's "extensive criminality" statement satisfied the dual purposes set forth in Hussein because it "identified the specific facts or circumstances within the range of statutory factors that the court considered" and "provided a rational and fair basis within the range of statutory factors for the imposition of consecutive sentences."  Id.  Thus, the sentencing court did not abuse its discretion in imposing a consecutive sentence.  Id. at 104, 315 P.3d at 730.

Unlike in Kong, we find that the circuit court in the present case did not adequately establish the basis for Barrios's sentence, which totaled 100 years of imprisonment, because it did not explain its reasoning for each consecutive sentence.

In sentencing Barrios, the circuit court considered several of the factors in HRS § 706-606.  Before imposing the

32

consecutive sentence, the circuit court stated: "Under 706-606, the Court needs to consider what kind of sentence is appropriate, and I can think of no other crime as horrendous as the one that you imposed upon this family other than murder." The court then stated:

> This young child was a child, a baby. I think she was eight years old when the abuse started. Eight years old, a second grader, and it went on for years and years and years. You groomed her. You used threats. You used manipulation. You used mind games. You molded her to be a victim . . . .
>
> The history and circumstances of the crime that the Court needs to look upon can be no more serious crime than the 72 A felonies that you're looking at, a total of 146 different counts. You have no respect for the law.

This demonstrates that the court examined the nature and circumstances of Barrios's crime under HRS § 706-606(1) and the need for the sentence "[t]o reflect the seriousness of the offense, [and] to promote respect for the law" under HRS § 706-606(2)(a).

The court also appeared to rely upon the need for the sentence "[t]o afford adequate deterrence to your criminal conduct" under HRS § 706-606(2)(b):

> The Court needs to consider just punishment for the amount of felonies that you are facing. The Court needs to consider adequate deterrence for your criminal conduct. You have convictions out of California. Your life of crime started back in '85. You are a sex offender out of California and never bothered to register in the State of Hawaiʻi.

(Emphasis added).

33

Finally, the circuit court considered the need for the sentence "[t]o protect the public from further crimes of the defendant" pursuant to HRS § 706-606(2)(c) when it stated: "It is the hope of this Court for the safety of all children that you should never see the outside of a prison's walls."

Despite the circuit court addressing these statutory factors on the record, the circuit court did not sufficiently explain its decision to impose multiple consecutive sentences as required by Hussein and Kong. For example, the circuit court offered no explanation as to why it decided to impose consecutive sentences for Counts 41 and 42 (kidnapping) and Counts 130-153 and 174-193 (sexual assault in the third degree), when the State had recommended the sentences for these convictions to run concurrently with the other sentences. Moreover, while the circuit court's explanation offered a rational basis for some of the consecutive sentences, such as pointing out that that the acts of fellatio with Mother present were particularly reprehensible, the court did not articulate a rational basis for each consecutive sentence that it imposed.

In State v. Williams, the Supreme Court of Minnesota articulated the importance of stating specific reasons when imposing multiple consecutive sentences. 608 N.W.2d 837 (Minn. 2000). In Williams, the trial court sentenced the defendant to three consecutive sentences for convictions of criminal sexual conduct, attempted first-degree murder, and first-degree

34

burglary, which all involved the same victim.  See id. at 839-40.
The trial court had identified 15 aggravating circumstances to
justify the consecutive sentences, all of which were "upward
departures" from the Minnesota Sentencing Guidelines.  Id. at
840.  However, the Minnesota Supreme Court held that the trial
court "erred in not separately identifying the aggravating
factors supporting each sentencing departure."  Id. at 841.

The Supreme Court of Minnesota explained that "a
separate analysis of the reasons for departure as to each
sentence may have led to a different sentencing result, would
have informed the appellant as to the rationale for each
sentence, and of course would have provided a clear record for
review."  Id.  The court stated that "[a] further concern is that
factors supporting departure on one sentence may not justify a
departure on another sentence."  Id.  "For example, the victim's
vulnerability due to the fact she was asleep when appellant
entered her apartment supports a departure on the criminal sexual
conduct sentence but does not justify a departure on the
attempted murder sentence because the victim was awake at the
time of that offense."  Id.

In other words, consistent with the Hussein principles,
a sentencing court should explain its rationale for each
consecutive sentence in order to inform the defendant and
appellate courts of the specific factors underlying each
sentence.  This helps to ensure that a sentencing judge takes

35

into account the differences among convictions prior to imposing multiple consecutive sentences. Thus, in order to provide a rational basis for imposing consecutive sentences as required by Kong, sentencing courts must state on the record the HRS § 706-606 factors that support each consecutive sentence. While the same factors could be sufficiently aggravated to justify imposing more than one consecutive sentence, the sentencing court should specify that basis or identify another basis for determining how many consecutive sentences to impose.

This requirement is particularly important in cases such as this one, where the circuit court expressly stated its intent to ensure that Barrios would never be released from prison, in contrast to the maximum twenty-year term applicable to the Class A felonies for which he was convicted. While such a sentence can be imposed in an appropriate case, a clearly articulated rationale is necessary when there is a large disparity between the maximum statutory sentence for each offense and the aggregate consecutive sentence imposed by the court.

In sum, we find that the circuit court abused its discretion in failing to adequately explain its rationale for imposing multiple consecutive sentences, and therefore Barrios's sentence must be vacated. See Kong, 131 Hawai'i at 102, 315 P.3d at 728.

We further note that the circuit court's comments suggest that it relied on Barrios's refusal to admit guilt as a

36

factor in imposing his sentence.  See State v. Kamanaʻo, 103 Hawaiʻi 315, 320, 82 P.3d 401, 406 (2003) (holding that the circuit court impermissibly inferred that the defendant lacked remorse based on his "refusal to admit his culpability for the offenses of which he was convicted").

In Kamanaʻo, this court held that "a sentencing court may not impose an enhanced sentence based on a defendant's refusal to admit guilt with respect to an offense the conviction of which he intends to appeal."  Id. at 316, 82 P.3d at 402. This court reasoned, in part, that doing so would "place the defendant in the dilemma of either abandoning his fifth amendment rights or risking a harsher sentence."  Id. at 322, 82 P.3d at 408 (quoting Harden v. Florida, 428 So.2d 316, 317 (Fla. Dist. Ct. App. 1983)).

This court then applied a three-factor analysis to determine whether the sentencing court erroneously relied upon the defendant's refusal to admit guilt:  "(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that, had the defendant affirmatively admitted guilt, his sentence would not have been so severe[.]"  Kamanaʻo, 103 Hawaiʻi at 323, 82 P.3d at 409 (quoting People v. Wesley, 411 N.W.2d 159, 162 (Mich. 1987)) (internal brackets omitted).  This court concluded that "Kamanao's refusal to admit guilt 'improperly influenced' the circuit court's decision to grant the

37

prosecution's motion for an extended term of imprisonment." 103 Hawai'i at 323.

Here, application of the three-part Kamana'o analysis weighs in favor of vacating Barrios's sentence. Under the first factor, Barrios maintained his innocence throughout trial--indeed, that was Barrios's sole defense--and, after his conviction, chose to remain silent during sentencing. Moreover, defense counsel indicated to the court in sentencing that Barrios had not submitted a letter of apology because he was intending to appeal his convictions. This factor thus weighs in favor of vacating the sentence. See Kamana'o, 103 Hawai'i at 320, 323, 82 P.3d at 406, 409 (explaining that first factor weighed in favor of vacating the sentence because the defendant "intended at all times to appeal his convictions, thus making it unwise and legally imprudent to admit his guilt in the circuit court during the sentencing hearing").

Under the second factor, the circuit court did not ask Barrios to admit his guilt at sentencing. However, the court in Kamanao also did not make such a request, other than confirming that the defendant continued to maintain his innocence. Id. at 323-24.

Under the third factor, the circuit court stated: "You have never exhibited any kind of remorse or responsibility for your actions. I believe at one point I was hearing about, oh, they made up the story to get me out of the house, or something

38

along these lines." The court also stated: "You showed no remorse. You showed no remorse then, <u>you show no remorse now</u>, and I know [defense counsel] has suggested that you not say anything. I respect that. That is your right. But your behavior is that of a twisted, sick person." (emphasis added) The court thus appeared to draw an inference from Barrios's decision to remain silent at sentencing that Barrios lacked any remorse, and implied that it was an "aggravating factor" it considered in imposing the extended sentence. <u>Mikasa</u>, 111 Hawaiʻi at 9, 135 P.3d at 1052. This provides further support as to why Barrios's sentence should be vacated.[12] See <u>id.</u>

## IV. Conclusion

For the foregoing reasons, the circuit court abused its discretion in imposing Barrios's sentence because it did not adequately explain its decision to impose multiple consecutive sentences and improperly inferred that he lacked any remorse. Accordingly, we affirm the portion of the ICA's March 13, 2015 judgment on appeal pertaining to Barrios's convictions, and we vacate the portion of the ICA's Judgment on Appeal pertaining to

---

[12] Barrios also argues that "the sentencing court resorted to name-calling and joined in the <u>ad hominem</u> attacks of the prosecution's witnesses." According to Barrios, this "offensive and discourteous conduct" is an additional ground for vacating the sentence. Because we vacate Barrios' conviction on other grounds, we do not address this argument. We note that the Principles of Professionalism for Hawaiʻi Judges (PPHJ) state that "[a] judge should be courteous, respectful and civil to lawyers, parties, witnesses, court personnel, and all other participants in the legal process." PPHJ Principle 1.

Barrios's sentence.[13]  We vacate the portion of circuit court's February 1, 2013 Judgment of Conviction and Sentence sentencing Barrios, and remand to the circuit court for resentencing before a different judge, consistent with this opinion.  See State v. Carvalho, 90 Hawai'i 280, 288, 978 P.2d 718, 726 (1999) (remanding to a different judge after the trial court used an improper sentencing procedure).

Benjamin E. Lowenthal
for petitioner

Artemio C. Baxa
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



---

[13]     We affirm the ICA's judgment with regard to Barrios's request for fees and costs.